Weight, Judge,
 

 delivered the following opinion, as the opinion of the Court in both of the preceding cases:
 

 It is rather a singular circumstance, that claims, such as the present bills set up, are made at this day, and at
 
 *329
 
 tempted to be enforced without theiauthority of a single adjudged case to support them. That conveyances like those set forth, made* under similar agreements, have before occurred, there can be little
 
 doubt;
 
 and it is equally certain, that if these agreements had ever been considered as entitled to the assistance of a Court of Equity, the diligence and industry of the Complainant’s counsel would have discovered the cases in which application to enforce them had been sustained, and relief granted. The silence of the Books on the subject, would seem oi‘ itself to affordwstrong presumptive evidence, that the Complainants are not entitled to the relief which they seek. But although such presumption exists, yet if they eould have shewn, that under the influence of any of those principles which direct the decisions of our Courts of Equity, they were entitled to relief, the Court would feel bound to grant it, notwithstanding it might seem to militate against the policy of the statutes which have been, from time to time, made for the protection and security of creditors. It is believed, that so far from granting relief to the Complainants, not only the statute against fraudulent conveyances, but every principle and rule which has been adopted and matured in Courts of Equity, for the purpose of suppressing fraud and of inculcating a course of fair and honest dealing among men, directly forbid 'it. The'* Complainants’ counsel rested their arguments much on the nature of trusts in the Civil Law, from which they have been taken and adopted into our Jurisprudence by the Courts of
 
 Equity;
 
 and cases were cited to shew, that by that Law, they were enforced, although they had originated in fraud on the part of the
 
 cestui que trust.
 
 To this it is a sufficient answer to say, that although the Courts of Equity may have derived. their idea of a trust from the Civil Law, yet that that Law lias no binding force or authoritative influence on these Courts, _twhich are guided altogether by a set of rules and. principles, peculiarly their own, that have gifown out of the condition and positive institutions ®f
 
 *330
 
 the country where they have been established. The Com‘plainants’ claim will derive very little w eight from the consideration that it would have been enforced by a Roman Praetor, if it 'be opposed by'any of these rtiles or principles. Some reading is also cited from
 
 Saunders on
 
 Uses, and
 
 Reeves's History of the English Law,
 
 to shew that trusts originated in covin, and that on their first introduction, they were applied to what might be deemed fraudulent
 
 purposes;
 
 that is, to avoid the statutes of mortijhaifti. But it is to be observed, that the clerical Chancellors who presided in the Courts of' Equity at that time, did not consider these conveyances as dishonest or against conscience, and rather leaned in favor of them, and enforced the secret trusts which arose out of them, and which produced a variety of acts of Parliament that were deemed necessary to prevent the fraudulent purposes to which they were applied : among others,. the 13th aiid 27 th of Elizabeth
 
 •,
 
 of the former, our act of. 1715 is nearly a copy. The Complainants’ counsel, however, contend, that although the statute makes the conveyances to which it. alludes void, yet that it does not give validity to any thing, and hence an inference is drawn, that when a'debt is discharged, to delay the payment of which a conveyance or secret trust is made,'the conveyance ceases to be binding, and the debtor becomes entitled to a reconveyance. But this argument is cer-' tainly unsound $ for although the statute does not validate any thing in express terms, it does by a very strong implication. It declares, “ that all "and every feoffment, gift, grant, alienation, bargain and conveyance of lands, tenements, hereditaments, goods and chattels,” &c. made for the purposes, or with the intent stated in the preamble, shall henceforward be deemed and taken “ only as against that person or persons, his or their heirs, executors, administrators and assigns, and every of them, whose fictions, suits, debts, accompts, damages, penalties and forfeitures, shall release by such cóviuous or fraudulent devices and practices, as is aforesaid, or shall
 
 *331
 
 er^ngbt be in any wise disturbed, hindered, delayed or defrauded, to be clearly and utterly void, frustrate and of.no
 
 effect;
 
 any pretence, colour, feigned consideration, expressing of use, or any matter or thing to the contrary notwithstanding.” As to the parties themselves, therefore, it must mean, that it shall be taken to be good
 
 ;
 
 for that which would otherwise be1 good, and is declared void only as to a certain intent, remains good to all other intents 5 and that such has been the construction- which the statute has heretofore received, may be gathered not only from the opinion of elementary writers on the subject, but from adjudged cases in the English Courts, and in our own—2
 
 Bac. Mr. 605-Fonblanque on
 
 Equity,
 
 139
 
 —Roberts
 
 on Fraudulent
 
 Conveyances,
 
 643
 
 —Cro.
 
 Jac. 270
 
 —1
 
 Ch. Ca.
 
 59—2 H
 
 ayw.
 
 348. In the case cited from
 
 Cro. Jac.
 
 the alienee was permitted to recover at Law from the executors of the debtor, the property conveyed, on the ground, that although the conveyance was void as to creditors, (it being made to defraud them of their debts) yet that it was good as against the person making it, and his representatives. But supposing.no adjudged casp or elementary opinion could be- found in support of such -a construction, yet the object and spirit of the Law would seem evidently to require it. ...The.design and intention of the act was the protection and security of creditors 5 this can only be effected by destroying all confidence between the parties to secret agreements ; by multiplying the difficulties which fraudulent debtors would have to-encounter in attempting to defeat their clai^ft; and denouncing every species of, forfeiture and risfc against such attempts, which can be .raised up against them in a Court of Equity. The act of Assembly, therefore, would seem a complete answer to the claims of the Complainants. But independent of the act, the claims are in direct opposition to some of the ím>St fundamental maxims which direct and influence the conscience of a Chancellor.
 
 He who hath done
 
 iniquity,
 
 shall not have Equity
 
 „•
 
 He who requires the aid of a Court
 
 
 *332
 

 of Equity, must disclose a fair and honest transaction
 
 „• are maxims which have never been departed from, aud ar,e |n ti¡rect hostility to the claims of the Complainants. It is true, that
 
 Francis,
 
 in his exposition of the first maxim, says that the iniquity must be done to the Defendant himself, and this exposition was
 
 much
 
 relied on by the Complainants’ counsel. But this exposition is certainly incorrect, nor does the case cited by
 
 Francis
 
 for the purpose, prove it. He cites a case where a person, during the great rebellion, who, in order to avoid a . sequestration by the usurper, had sworn,
 
 in an
 
 answer in Chancery, that he had been satisfied for a debt, was permitted to recover by a Chancellor sitting after the restoration
 
 ;
 
 and who, no doubt, held that the opposition to the claim was more unconscientious than the means taken to avoid the sequestration. The true exposition of the maxim is to be found in 1
 
 Fonbl.
 
 ch. 4, sec. 13, where, after stating it, he says, “ But this must be understood where such person is Plaintiff,” &c. And the following adjudged cases illustrate it: 2
 
 Vern.
 
 602—1
 
 Ch. Ca.
 
 202—1
 
 Vern. 475
 
 —2
 
 Ves.
 
 156. The case of Gale v. Lendo, 1
 
 Vern. 475,
 
 was a case where the party against whom relief was sought, was in no wise to be injuriously affected by the transaction, in as much as she had received the money for the bond which she had given to her brother on her marriage. The obligor,, however, was not permitted to recover, because he had taken it with a fraudulent intention to operate against her husband,/who had died
 
 ;
 
 and although he was not affected by it, nor could his estate be made liable for it, yet as it was givpn originally for a fraudulent purpose, it was void as against all persons. This case is also ah answer to the argument of the counsel, which went to shew that although a fraud was contemplated, yet none was effected, and that therefore no forfeiture should attach against Complainants. The fraud consists, not in the actual injury sustained by the person intended to be injured, but in tlie act itself, and the turpitude of the motive which influenced the party
 
 *333
 
 to its
 
 commission;
 
 p,nd that which was once a fraud always remains a
 
 fraud
 
 — 1
 
 Vern. 475.
 

 It would therefore seem, from this view of the cases, that so far from Complainants’ being entitled to relief upon any ground of Equity, they are opposed not only by the statute against fraudulent conveyances, but also by the maxim, that he who hath done iniquity, shall not have
 
 Equity;
 
 and by the principle, that no Plaintiff is entitled to the aid of a Court of Equity to enforce a contract entered into with a fraudulent intention, and for a fraudulent purpose. This renders it unnecessary to consider the other part of the cases, that is, whether parol proof.should be admitted to prove the private agreement; for if this agreement had been reduced to writing, with all possible solemnity, it would not have received the aid of a Court of Equity for a specific performance. ‘ The bills must therefore be dismissed. '