# CHARLESTON.

## CRISS *v.* CRISS.

Submitted June 10, 1908.    Decided May 11, 1909.

FRAUDULENT CONVEYANCES—*What Constitutes—Imaginary Liability.*

A conveyance of land to be held in trust for a third person, the grantee and beneficiary intending by putting it in the hands of the grantee, to shield it from imaginary liability which the beneficiary feared might be attempted to be asserted, based on forged papers which the parties feared were in existence, when in fact there were no such papers, and no such liability, and the beneficiary owed no debts, will not be held void under the statute avoiding deeds made with intent to defraud creditors, and the trust will be enforced in equity. (p. 686.)

Appeal from Circuit Court, Harrison County.

Bill by Anna Criss against Michael Criss. Decree for defendant, and complainant appeals.

*Reversed.*

JOHN BASSEL and HAZE MORGAN, for appellant.

L. C. CRILE and DABNEY C. LEE, for appellee.

BRANNON, JUDGE:

Anna Criss filed her bill in equity in the circuit court of Harrison county against Michael Criss, and her bill was dismissed on demurrer, and she appeals.

The bill states that Anna Criss was owner of a lot on Main street in the city of Clarksburg, and that she conveyed it to Hezekiah F. Criss; and that later in consideration of some of the purchase money which he had not paid her and of further indebtedness of him to her, Hezekiah F. Criss conveyed to Howard P. Criss, a son of Anna Criss, a certain lot on Monticello avenue and Maude street in Clarksburg, on which was a dwelling house, which was occupied by the said Anna Criss and her family. That the conveyance by Hezekiah F. Criss of said lot to Howard P. Criss was in trust for the use and benefit of his mother, Anna Criss, and that Howard P. Criss accepted the said conveyance in trust for his mother, she having paid the whole consideration therefor; that later, as Howard P. Criss

was about to leave home and settle in another state, by agreement of the parties said lot was conveyed by Howard P. Criss to another son of Anna Criss, Michael Criss, then a single man living on the said lot with his mother and other members of the family; that Michael Criss paid nothing whatever for the conveyance to him of said lot, and that it was a distinct agreement between Anna Criss and Howard Criss and Michael Criss that Michael Criss should hold the said lot in trust for the sole use and benefit of his mother, Anna Criss, and that the family should continue to reside in the house on said lot. The bill further states that Anna Criss in 1905, through the instrumentality of Michael Criss, was incarcerated in the West Virginia Hospital for the Insane at Weston, but remained therein a short time only until she was taken out of the hospital upon a bond given by one of her sons, the said Michael Criss refusing to bail her out and using every means at his command to keep her in the said hospital, even employing counsel to appear before the board of directors of said hospital to advocate her return to it; but that the plaintiff was soon discharged from said institution as cured, having in fact never been unsound in mind, although the action of the defendant was such shortly preceding her commitment to the hospital, when she demanded of him a deed for the lot, as almost to drive her to distraction. The bill further states that Michael Criss never set up any claim to the Monticello avenue property, and does not yet, except by way of a baseless, trumped-up and untrue alleged set-off of $4,000 for keeping the family, until the plaintiff was committed to the insane asylum, when assuming that the plaintiff had become civilly dead for the remainder of her life, and that defendant's brothers and sisters would not litigate with him the right to the property, he, Michael Criss, then married, gave up the property which he had rented in another part of the county and took possession, with his family, of the residence in controversy, and of the plaintiff's personal property, and broke up the plaintiff's home, driving her sons, one then fifteen years of age, another twenty years of age, and a daughter then seventeen years of age, out of their life long home and compelling them to go upon the streets among strangers, after giving the daughter written notice to vacate the property, and that since then the defendant has occupied the property, for a period of about one year be-

fore the bringing of this suit. The bill further states that defendant, Michael Criss, has refused to convey the said property to the plaintiff, though often requested to do so, and that she has been forced to live upon the charity of other children, when her own property, if she could have it, would afford her home and support. The bill further states that the husband of Anna Criss had been engaged in the saloon business and broke up, and that she had engaged in business herself and prospered therein, and did not owe a dollar at the time she purchased the Monticello avenue property from Hezekiah F. Criss, but that she was informed and believed until a little while before the institution of this suit, that her name had been forged to securities, orders and other paper, the payment of which might be attempted to be enforced against any property she might acquire in her own name, and to avoid the expense and annoyance of being obliged to defend her property from supposed liabilities which she had never incurred, and for that reason alone, she had taken the conveyance of said property in the name of her son, Howard P. Criss, and afterwards for the same reason, and for that reason alone, had the property conveyed to her son Michael Criss, the defendant, her purpose being only to let the legal title remain outstanding until any judgments against her or any securities with her name forged might expire by limitation, when it was her purpose to take the legal title to herself, of which purpose the defendant well knew. The bill further states that at the time of the conveyance by Hezekiah F. Criss to Howard P. Criss, and at the time of the conveyance by Howard P. Criss to Michael Criss, the plaintiff, Anna Criss, had no creditor or outstanding obligation owing by her, and that she was innocent of any intent to hinder, delay or defraud creditors; and that about the time of the institution of this suit she for the first time caused investigation to be made of said supposed forgeries with the result that she was informed that none such ever existed that would have been enforceable against said property, even had she taken the conveyance directly in her own name instead of that of her son. The bill prayed that the defendant be compelled to convey the said Monticello avenue property to the plaintiff, and that the defendant be required to account to her for rents, issues and profits from the time when he moved into the property in July, 1906.

The defence claims that the statute of limitation bars relief to the plaintiff and that the statute began to run from the date of the deed from Hezekiah Criss, 11th December, 1893. This trust is an express trust and the statute of limitations does not commence to run against such a trust until it is disavowed and repudiated by the trustee, with notice of such repudiation by the beneficiary. *Woods* v. *Stevenson,* 43 W. Va. 149. The bill does not mention any repudiation of the trust by Howard P. Criss, or any disavowal of it by Michael Criss until very lately, in 1905, when his mother was taken to the hospital for the insane, and this suit was brought as early as August, 1906. Moreover, the plaintiff was in possession of the property, living in it with her family, until 1905, when she was taken to the hospital, and of course neither the statute nor laches would have run against her while she occupied the property for a residence for herself and family. *Mullins* v. *Shrewsbury,* 60 W. Va. 694. It is strange doctrine that the statute or laches runs against a person in possession. Moreover, I thought that one to plead the statute must be in possession for the period prescribed by it, and in exclusive possession, shutting out the other claimant. The bill says that this defendant has been in possession exclusive only one year. The plaintiff had possession until 1905. So neither statute nor laches bars the plaintiff.

The main question in this case, that on which the defence really rests, is, on the theory, based on the statement of the bill, that the conveyance from Hezekiah F. Criss to Howard P. Criss, as also that from Howard P. Criss to Michael Criss were made to hinder and defraud creditors, and that equity will not enforce a trust created for such illegal purpose; that a grantor in a deed made with intent to defraud by covering up the property in another name will not be allowed to regain the property in a court of equity; that the deed is good and binding at law between its grantor and grantee, passing legal title, and that equity, though the grantee paid nothing, and agreed to hold for the use of the grantor, will not compel the grantee to reconvey to the grantor, and thus countenance fraudulent conveyances. This Court has discussed this subject in many cases. *Poling* v. *Williams,* 55 W. Va. 69; *Edgell* v. *Smith,* 50 *Id.* 349. I refer to that excellent late work, American & English Annotated Cases. In Vol. 3, p. 942, is an elaborate collection of cases.

But does this case fall under that principle of equity law? To say so would carry the principle very far. Anna Criss owed no debts. The property was not in fact liable for any debts in her hands, if it had been in her hands. I have carefully examined the law upon this subject, and I conclude that this case does not fall under the rule just stated. Let us see if the law will sustain this position. "A conveyance made with intent to defraud creditors is not fraudulent if there were no creditors." Moore on Fraud. Convey., sec. 9, p. 85. "There must be creditors who may be delayed, hindered or defrauded, and the necessary consequences of the act must be to produce such delay, hinderance or fraud." 2 Bump Fraud. Convey., sec. 25. In *Kervick* v. *Mitchell,* 68 Iowa 273, we find it held that "where there is no creditor in fact, but only an imaginary one, through fear of whom the grantor, encouraged by the grantee, makes the conveyance, the fraudulent intent will not be imputed to the grantor, and, where the conveyance of the property has been without consideration, he may recover the same or its value." In *Day* v. *Town,* 51 Iowa 364 (1 N. W. Rep. 786), the court said: "The sole object of the statute (the statute against fraudulent conveyances) is to prevent conveyances of property with intent to defraud creditors, purchasers, or other persons. If there were no creditors or purchasers, the conveyance could not be fraudulent as to them. * * * His intention in so doing was wholly immaterial, provided no one but himself was injured or had cause to complain. It was not the intent the statute should be regarded in the light of a moral code and operate on the conscience of the party making the conveyance. Its purpose is to protect the legal or equitable rights of others." In 14 Am. & Eng. Ency. L. 251, it is laid down as law 'that, "To constitute a disposition of property fraudulent within the terms of the statute, there must be a debtor intending to defraud, a creditor to be defrauded and a conveyance of property which would have been appropriated by law to the payment of a debt due, and out of which the creditor could have realized all or a portion of his claim. * * * * * The second essential of a fraudulent conveyance which follows necessarily from the first is that there should be a creditor to be defrauded." In *Dearman* v. *Dearman,* 4 Ala. 521, was a conveyance of slaves made from apprehension that creditors of the father, who once owned the prop-

erty, would seize it for his debts, and it was held that as the slaves were not liable for the debts, the agreement would not render the transfer fraudulent, and the property could be reclaimed. In *Pope* v. *Wilson*, 7 Ala. 690, the court said: "It is self-evident that where there are no creditors, there can be no intention to defraud them." *Vandever* v. *Freeman,* 20 Texas 333, 338, is to the same effect. In *Baker* v. *Gillman*, 52 Barbour 36, a man conveyed property to prevent its being subjected to a recovery in a slander suit, the grantee agreeing to reconvey. There were no other debts. The slander suit was defeated. It was held that there was no lawful debt binding the property and a recovery was decreed.

It is argued that this trust being by oral agreement, it is void under the statute of frauds for want of a writing declaring it. It is well established in this State that such a trust need not be declared or created in writing. Hogg's Eq. Princ., p. 740. It is useless to multiply authorities for a proposition so well established in this State. Counsel for the defence cite us to *Cain* v. *Cox*, 23 W. Va. 594, and *Troll* v. *Carter,* 15 *Id.* 567, to show that a writing is required. In those cases the conveyance was to hold in trust for the grantor himself, not the case where one conveys to hold in trust for a third person. To say that where one conveys to another to hold for the benefit of the grantor would be flat contradiction of the deed, and hence would not be good as a trust. *Troll* v. *Carter* expressly says, however, that if the conveyance be made without consideration upon trust that the grantee will hold for a third person such trust will be enforced. In this case the deeds were not from Anna Criss as grantor in trust for herself, but the conveyance was made between other parties to hold in trust for her.

If the facts stated in the bill are true, law and justice combine to sustain the plaintiff's cause. Therefore, we hold that the bill presents the case of an enforceable trust, and we reverse the decree of the circuit court, and overrule the demurrer and remand the cause.

*Reversed.*