# CHARLESTON.

.MILDRED HALL v. W. EDWARD LINKENAUGER et als.

(No. 6075)

Submitted March 14, 1928.      Decided April 10, 1928.

1. TRUSTS—*In Suit to Enforce Parol Trust, Parol Evidence That Consideration Named in Deed Did Not Pass is Admissible.*

   Parol evidence is admissible to show that the consideration named in a deed did not in fact pass, where the suit is to enforce an alleged parol trust in the land deeded.  (p. 389.)

   (Trusts, 39 Cyc. p. 81.)

2. WITNESSES—*In Suit to Assert Parol Trust in Deceased's Land, Evidence of Personal Transactions With Her Concerning Land by Plaintiffs, or Other Interested Persons is Inadmissible; if Tenant by Curtsey, Sued to Establish Trust in Wife's Land, Testifies Concerning Personal Transactions With Wife, Adversary's Testimony Relating Thereto is Admissible; "Survivor" (Code, c. 130, § 23).*

   A tenant by curtesy is a survivor within the meaning of sec. 23, chap. 130, Code, and, in a suit against his deceased wife's heirs and himself as such tenant to assert a parol trust in land deeded to her, evidence of personal transactions with her concerning the land, by plaintiffs or other persons interested in the event thereof, is inadmissible; but if the tenant by the curtesy shall give evidence concerning such personal transactions involved in the suit, the bar of the statute is removed, and the testimony of his adversary taken either before or after the testimony of the tenant by the curtesy becomes admissible.  (p. 390.)

   (Witnesses, 40 Cyc. pp. 2302, 2342.)

3. FRAUDULENT CONVEYANCES—*Defendants Have Burden to Prove Existence of Bona Fide Creditor and Execution of Deed to Defraud Creditors as Defense to Suit to Establish Parol Trust; in Suit to Establish Parol Trust, Defendants' Evidence Held Not to Establish Defense of Conveyance to Defraud Creditors.*

   Where, in a suit to enforce a parol trust in land deeded in fee to the alleged trustee, the defense, relied upon to defeat the reconveyance of the land in accordance with the trust, is that the grantor made the deed with intent to hinder, delay

and defraud a creditor, the burden is upon defendants to prove that there was in fact a *bona fide* creditor, or one standing in that relation, and that the deed was made with such fraudulent intent. A case where such burden has not been clearly borne. (p. 391.)

(*Fraudulent Conveyances*, 27 C. J. § 432.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Kanawha County.

Suit by Mildred Hall against W. Edward Linkenauger and others to establish a trust in land. From an adverse decree, plaintiff appeals.

*Decree reversed; remanded, with directions.*

*F. B. Shannon* and *Poffenbarger & Poffenbarger,* for appellant.

*H. D. Rummel, D. O. Blagg, Arthur G. Stone* and *H. R. Anderson,* for appellees.

LIVELY, JUDGE:

On September 28, 1923, Robert L. Hall and wife, Mildred, deeded in fee about four acres of land on Ferry Branch, Kanawha County, valued at about $15,000.00, to Martha Linkenauger, who died intestate on September 15, 1925, from the effects of an automobile accident, leaving surviving her, W. Edward Linkenauger, her husband, and five infant children, all defendants in this suit. After her death, Mildred Hall, the mother of Martha Linkenauger, deceased, and wife of Robert L. Hall, grantor in the deed, demanded of W. Edward Linkenauger a deed for his interest in the land claiming that Martha held title thereto from Robert L. Hall in trust with the understanding and agreement that she should convey the land to her, Mildred Hall, the true owner, whenever she was requested by her mother or Robert L. Hall. Linkenauger refused, and this suit was instituted to December Rules 1925. Plaintiff sets up the above facts in her bill, and charges that the deed made to Martha was without consideration, and upon the promise and agreement of Martha to hold the title in trust for plaintiff and convey the legal title to her whenever requested by plaintiff or her husband, Robert L. Hall;

and that at all times since the making of the deed she and her husband have resided on the land with full and complete possession and control thereof as if no deed had been made, and paid the taxes and improved the property at great expense. The prayer is that the trust be enforced, and the title be conveyed to plaintiff. The infants answered formally by guardian *ad litem.* W. Edward Linkenauger demurred and answered admitting that plaintiff and her family had always retained possession and enjoyment of the property, and paid taxes thereon, but averred that such possession and enjoyment was merely permissive. The answer says that respondent is informed and believes that the deed to his deceased wife was for valuable consideration, and denies the alleged trust and agreement to reconvey whenever requested. The answer further says that if there was no consideration paid, and even if there was an agreement to reconvey, the deed was made with intent to hinder, delay and defraud existing and future creditors of Robert L. Hall. It says that one J. W. Howard from 1919 to 1923 had kept and maintained three infant children of Robert Hall, and in June, 1923, had sued Robert on that claim for $3,050.00, which suit was pending at the time the deed in question was executed September 28, 1923, and that it was the intention of Robert in making the deed to hinder, delay and defraud Howard in the collection of his claim, which fact defeats the bill for reconveyance of the title to plaintiff who joined in the deed.

Robert L. Hall was permitted to ''reply specially'' to Linkenauger's answer in which he denies that any consideration was paid, and avers the trust as set up by his wife in her bill. He denies that he owed Howard any money, and says that the suit by Howard for $3,050.00 against him was tried on October 16, 1923, and a judgment of *nil capiat* entered in his favor; and denies that the deed was made for the purpose of hindering, delaying and defrauding anyone. The issues raised are: (1) Was the deed made to Martha Linkenauger with or without payment of consideration, and upon her parol agreement to deed the land to her mother, the plaintiff? (2) Did Robert L. Hall and his wife, the plaintiff, execute and deliver the deed with intent to hinder, delay and defraud

a claim in suit pending? (3) And if made with that inten-
tion, what effect would the defeat of that claim have upon the
prayer of plaintiff for conveyance of the land to her? The
decree does not disclose on what issue or issues the cause was
decided; it simply dismissed plaintiff's bill at her costs. It
appears that Robert L. Hall was the father of seven children
all living with him, ranging in age from five to eighteen years
by his first wife, and his second and present wife Mildred
(plaintiff), on the property in suit. Mildred had several
children by a former husband, and Martha Linkenauger to
whom the deed was made on September 28, 1923, was one of
them, and the mother of the five infant defendants.

The suit is by the mother against her son-in-law, Linken-
auger, and her grandchildren to extract title to the land held
by them under a parol trust in favor of plaintiff which ex-
isted between her and her dead daughter. The land in con-
troversy is valued at from $15,000.00 to $18,000.00, and in-
cluding three dwelling houses upon it. Plaintiff and her hus-
band and his seven infant children have always been in pos-
session of the property using it as their own, renting two of
the houses and using the rents and paying the taxes, and it
appears that a short time before the death of Martha Linken-
auger, had improved and repaired one of the houses at an
expense of about $400.00. R. L. Hall, who had title to the
land when he and plaintiff, his wife, conveyed it to Martha in
1923 under the alleged trust agreement, is a carpenter and
builder, and did the labor on the improved house. Defendant
Linkenauger is also a carpenter and in years past owned a
small house which he sold, and for many years has lived in
rented premises. At the time of the deed, September 28,
1923, a suit at law was pending in the circuit court against
R. L. Hall instituted by a Mr. Howard to May or June Rules
for the alleged support of R. L. Hall's children. This suit
was tried by a jury on October 16, 1923, and a verdict ren-
dered in favor of Hall, and judgment entered thereon. It
appears that the deed was prepared in some attorney's office,
and acknowledged and recorded on September 28, 1923, all
at the expense of R. L. Hall. Two years later, September 25,
1925, Martha met sudden death in an automobile collision,

the title at that time remaining in her; and upon the refusal of Edward Linkenauger to have the alleged trust executed, this suit was begun. These are the facts about which there is little or no controversy, and form a background on which to consider the conflicting evidence concerning the alleged trust, the purpose of the deed, and the intention of the parties to it.

What consideration, if any, did Martha give for the land? The expressed consideration is $1,000.00. Her financial condition, buttressed by her subsequent declarations, impel the conclusion that she paid nothing. The property was worth from $15,000.00 to $18,000.00, and it is scarcely reasonable that the owners would sell it for $1,000.00. There is no documentary evidence of payment of any sum whatever, except the recitation in the deed. "The entire weight of authority tends to show that the acknowledgment of payment in a deed is open to unlimited explanation in every direction." · *Goodspeed* v. *Fuller*, 46 Me. 141. "The cases uniformly hold that, although a deed acknowledges the receipt of a consideration, parol evidence is admissible to show that it has not, in fact, been received, if the purpose of the party seeking to introduce the evidence is not to invalidate the deed as a conveyance." *Rude* v. *Levy*, 43 Colo. 482; note in 25 L. R. A. (N. S.) 1197. In accord: *Wilfong* v. *Johnson*, 41 W. Va. 283; *Rymer* v. *Oil Company*, 54 W. Va. 530, 537. The evidence and circumstances successfully militate against a purchase and sale. The deed was made either for a trust or to avoid the effect of Howard's pending litigation and without monetary consideration.

We next consider the alleged parol agreement that Martha would reconvey the land to her mother, the plaintiff. Both plaintiff and her husband testified as to the understanding and agreement. Plaintiff says that both her husband and Martha told her: "He (her husband), put it to her name and she (Martha), was to put it to me," and that the reason for transferring the property to her (plaintiff), was that Robert, her husband, was sick and was not expecting to live long, and wanted her to have the property. The husband says that he conveyed it to Martha to hold in trust for his wife, so that his children could not dispossess her after

his death and she could sell it to get money to rear them; and that he had been advised that he could not deed it direct to his wife. Mrs. Rosa Jones, a sister of Martha, says the latter often told her that the land had been deeded to her so she could deed it back to her mother, because Mr. Hall could not deed it direct to "mamma", and that she was going to deed it back. Mrs. Burdette says Martha told her that Mr. Hall had deeded it to her so that she could deed it back to her mother, and that she had asked Mr. Hall about deeding it back, and he had always replied that they had plenty of time. Mrs. Edens, a close neighbor, says Martha told her she was going to deed it back, and was ready at any time they were. Mrs. Cunningham, another neighbor, says Martha told her the deed had been made to her, and if anything happened she would deed it back to the children, "for it ain't mine". Mrs. Ella Linkenauger, a daughter of Mr. Hall and a neighbor, says that Martha told her that Mr. Hall had put the property in her name, and that she was "ready to deed it back to 'mamma' any time she gets ready." Defendants' evidence on this point accentuates the conclusion that no consideration was paid by Martha (except that of Mary Linkenauger, a sister of defendant, who said Martha told her she was not going to deed it back until she got her money out of it), and does not controvert or tend to controvert the agreement and intention of Martha to reconvey the property. The effort of the evidence of defendants' witnesses is to show that the deed was made to Martha for the express and only purpose of defeating Howard in the collection of any judgment he might obtain in his suit. But defendants say with much force that plaintiff's testimony and that of her husband respecting the character and intention of the conveyance is incompetent and inadmissible under section 23, chapter 130, Code, as involving a personal transaction or communication between them and a deceased person. While the husband's testimony was inadmissible as against the infants, although it was not excepted to on the ground of inadmissibility when first offered, no witnesses for the defense having been examined at that time, we find that afterwards on October 10, 1926, Edward Linkenauger, the husband of Martha and tenant by curtesy, testi-

fied that his wife had told him about the transfer but that he didn't know she had the deed until a little while before she died, and that she told him she was going to move into one of the small houses on the property and that she owned it. His evidence in other respects tended to show that his wife had accumulated money which she might have paid at the time the deed was made, and that plaintiff and her husband had made admissions tending to show that his wife had not taken the deed in trust; and that his wife had not made certain admissions concerning the deed and its purpose in his presence testified to by a witness for plaintiff. Afterwards in April, 1927, plaintiff went on the stand and denied making statements imputed to her by defendant Linkenauger and detailed what Martha told her, as above set out. We think that defendant Linkenauger's evidence related so intimately to the purposes of the transaction that he rendered admissible the evidence of plaintiff and her husband, which would have otherwise been inadmissible under the statute. That defendant Linkenauger is within the class of persons mentioned in the statute who are protected and who may therefore open the door to such evidence by testifying on their own behalf, is decided in *Seabright* v. *Seabright,* 28 W. Va. 412. We conclude that the evidence and circumstances proves to reasonable certainty that the deed was without consideration, and the property was to be reconveyed to the mother by Martha.

On the remaining issue as to whether plaintiff and her husband made the deed with intent to hinder, delay and defraud Howard in the collection of his claim in the pending suit, and if so, will such intent defeat the prayer of plaintiff's bill, we have had some difficulty in reaching a decision. This is the major issue. The evidence on this issue is conflicting. Plaintiff and her husband say that the deed was made for the purpose of transferring the title to the wife as above stated, and not to defeat Howard's suit. The fact that title remained in Martha about two years after the failure of Howard's suit is a circumstance in their favor; while on the other hand transfers of this character are usually completed by a deed from the intermediary contemporaneously with the deed to the intermediary. Robert Hall says he had about $6000.00 in

money and bonds and was amply able to pay any judgment Howard might have recovered, without recourse to the real estate; and there is some evidence to substantiate this claim. On the other hand Mrs. Mary Linkenauger and Mrs. Entzminger, sisters of defendant Linkenauger, testify to declarations by plaintiff and her husband to the effect that the deed was made to defeat Howard's suit. Defendant Linkenauger says that Robert told him, after Martha's death, that the deed to her was with that intent; and Mrs. Stuck, not related to either party, says that Mrs. Hall told her that her husband, Robert, had told her that the property would have to be transferred, and that it had been transferred to Martha. No reason for the transfer was stated to this witness. These declarations and conversations are all denied. Evidently the trial court based its decree on the assumption that the deed was made to hinder, delay or defraud Howard, a creditor. Howard's suit was pending, and was tried about twenty days after the deed to Martha had been made. The consideration of $1,000.00, named in the deed (when none was paid), indicates that it was intended to create the impression of a sale, although the property is conceded to be worth fifteen times that amount. Then these alleged declarations of purpose added to the circumstances would all tend to impress a court with the idea that the pendency of Howard's suit entered, to some degree, in the motive which induced the deed. The grantor may have intended to transfer the property to his wife; but the pendency of Howard's suit spurred consummation. Presuming that the evidence warranted the conclusion of the trial court, what effect does it have on the relief prayed for? Generally, if a contract for transfer of realty in fraud of creditors has been executed, a court of equity will deny affirmative aid to either party. It will leave them where it finds them. But there is a sharp conflict in the decisions where the deed is made with intent to defraud creditors, when, in fact, there was no creditor in existence. Many well reasoned decisions hold that the existence of creditors in fact is immaterial if the deed was made with fraudulent *intent;* and the grantor cannot subsequently recover the property conveyed. The principle underlying these decisions is that the

*intent* governs although the grantor may have believed that the claim being pressed against him is fictitious, and has no foundation in law or equity. It is considered that the moral quality of the act resides in the intention; and to protect public welfare the courts will deny a complainant relief where his cause of action arises *ex turpi causa*, or from the transgression of positive law. The principle is well stated and vigorously applied in *Pride* v. *Andrew*, 51 Ohio St. 405; *Carson* v. *Beliles*, (Ky.) 1 L. R. A. (N. S.) 1007; *Tantum* v. *Miller*, 11 N. J. Eq. 551; *Jackson* v. *Marshall*, 5 N. C. 323, 3 Am. Dec. 695; *Ratliff* v. *Ratliff*, 102 Va. 880; *Holliday* v. *Holliday*, 10 Iowa 200; *Jones* v. *Jones*, 20 S. D. 632, 108 N. W. 23, and *Messer* v. *Ziegler*, (Tex.) 282 S. W. 620. Other courts have reached opposite conclusions, holding that a deed to defraud creditors is not fraudulent unless there are creditors to be defrauded, and that where the deed is made to avoid satisfaction of a possible judgment in a pending suit, the grantor may recover back the property after the suit has been decided in his favor. The reason for these decisions is that the statute is violated only when there are creditors to be defrauded, and when the statute does not apply, the courts should enforce the rights of the parties in accordance with their contract. Bump on Fraudulent Conveyances, (4th ed.) sec. 441; *Smith* v. *Bowen*, 3 N. C. 296; *Brady* v. *Ellison*, 3 N. C. 348; *Day* v. *Lown*, 51 Iowa 364; *Gunderman* v. *Gunnison*, 39 Mich. 313; *Kervick* v. *Mitchell*, 68 Iowa 273; *Brant* v. *Brant*, 115 Iowa 701; *Vandever* v. *Freemen*, 20 Tex. 334; *Rivera* v. *White*, 94 Tex. 538; *Boyd* v. *De La Montagnie*, 73 N. Y. 498; *Baker* v. *Gilman*, 52 N. Y. Sup. Ct. 26; *Criss* v. *Criss*, 65 W. Va. 683; and *Thomas* v. *Anderson*, 76 W. Va. 496. In one of the cases above cited, *Day* v. *Lown*, 51 Iowa 364, it was said that it was not intended that the statute against fraudulent conveyances should be regarded in the light of a moral code, "and operate on the conscience of the party making the conveyance."

Without attempting to analyze these various conflicting decisions, and no doubt the decision in each case was influenced by the facts, we are disposed to follow our own cases above cited. In the *Criss* case the plaintiff pleaded in her bill that

she caused the deed to be made to her son, in trust for her, in order to defeat obligations which she feared might attach to her land if she took title in her own name. She admitted an *intent* to place her land beyond the reach of debts which she *then* believed to be real, but which afterwards was found to be imaginary and not in existence in fact. In the instant case there is a sharp conflict in the evidence on the question of intent with which the deed was made. Plaintiff's husband says Howard's claim in suit was unfounded and unreal, and no one says to the contrary; and afterwards it was so determined, judicially. He testified that he had ample personal property out of which Howard's claim could have been paid. The pendency of Howard's suit is relied upon as a defense, and the evidence leaves it very doubtful whether the deed was made with the intent to defeat Howard's spurious claim in suit. The burden was on defendant to show that the deed was made with the intent to hinder, delay and defraud a creditor, with the secret understanding that it was to be held for the grantor's benefit and thus affectuate the fraud. If the case clearly fell within the principles enunciated in the class of cases first above cited, we would take no heed to the injustice resulting from permitting defendants to take this valuable property without any valuable consideration; for in such cases the courts will not look to the supposed hardships as between the parties, but will leave them where they are found, with unclean hands besmirched with fraud. Equity clamantly demands that the parties shall be left in the fraudulent bed which they have made. But that is not the situation here, and equitable principles should be applied. Should defendants be permitted to reap the fruits of lifelong arduous labors of this frugal carpenter for nothing? Shall this mother and stepfather with his seven infant children be made penniless and dependent? Equity and good conscience answer in the negative.

There may be some adjustment of tax payments and other like items between the parties, and the decree will be reversed and the cause remanded for the purpose of entering a decree below in accordance with the prayer of plaintiff's bill.

*Reversed; remanded with directions.*