CHRISTIAN BUTTLAR

*v.*

MINA BUTTLAR.

[Submitted July 2d, 1903.   Decided January 11th, 1904.]

1. A husband and wife, having an estate in lands by the entirety and living separately and having entered into an agreement whereby the husband was to receive all the rents and profits in consideration of his paying the wife a certain sum each month, were divorced from the bonds of matrimony by a competent decree.—*Held*, that the result of the decree of divorce was to change the estate to a tenancy in common, and that the agreement for support was no defence by the divorced wife against a suit by the husband for partition of the premises.

2. The general rule is that no vested interest, as between husband and wife, is disturbed by a decree of divorce unless the instrument under which the vesting arose provides therefor.

3. The fact that property once held by parties jointly was voluntarily conveyed by one to the other for the purpose of hindering and delaying the grantor's creditors, and after those creditors were all satisfied was by proper conveyance restored to its original *status*, does not injuriously affect the right of the original fraudulent grantor to a partition of the premises.

On final hearing on bill, answer and cross-bill and replication and proofs in open court.

*Mr. Marshall W. Van Winkle,* for the complainant.

*Mr. John I. Weller,* for the defendant.

PITNEY, V. C.

The facts displayed and the questions arising on the pleadings may be briefly stated as follows:

In the year 1894 the complainant and defendant, being husband and wife, were seized in a joint estate of two parcels of real estate in Hudson county, one on Malone street in the town of West Hoboken, and one on First street in the city of Hoboken.

At that time they entered into a contract, in writing, for separate living, dated January 31st, 1894, and printed *in extenso* in *Butllar* v. *Buttlar, 57 N. J. Eq.* (*12 Dick.*) *650.*

The effect of that contract was to give the husband the rents and profits of the premises in question during his natural life and to put him under obligation to pay his wife the sum of $75 per month. The length of time such payments should continue is not mentioned, but the wife agreed to take such sum in full satisfaction of all support and maintenance and all alimony whatsoever.

Some time subsequent to the decision of *Buttlar* v. *Buttlar* complainant brought an action against defendant for divorce on the ground of desertion, to which she filed a cross-bill against him for divorce on the ground of adultery, with the result that on March 24th, 1902, a decree for divorce on the ground last mentioned was made in favor of the defendant and against the complainant, which contains a reservation of the right of the defendant to apply for permanent alimony. Whereupon, on the 25th day of March, 1902, the complainant served upon defendant a paper in which he declared that he rescinded the contract above mentioned, stating, among other things, as ground for his rescission that the agreement was made between the parties while they were husband and wife and in consideration of that relationship, and, further, because the agreement was made in consideration of the real estate being held between the parties by the entirety, which particular estate had been determined by the decree of divorce.

On May 6th, 1902, complainant filed his bill against defendant for a partition of the two pieces of property above mentioned, on the ground that the estate of the parties had been changed by the decree of divorce to an ordinary tenancy in common. No mention is made in the bill of the agreement above mentioned and no relief is prayed against it.

The defendant, by her answer and cross-bill, admits in substance all the facts above stated and that the premises in question are now held between the parties as tenants in common as the result of the divorce.

She sets up in defence of the partition the contract of January 31st, 1894; alleges that the same is still in force between the parties and that by reason thereof the lands are not now subject to partition between the parties.

Thus far the questions raised by the pleadings are almost entirely of law. But the defendant proceeds, by her cross-bill, to set up what she claims to be an equitable title to all the premises, and for that purpose she goes into the history of the married life of the parties from its inception, in which she sets up facts and circumstances tending to show, and she charges the truth to be, that the property in question was all purchased and paid for with her individual funds, and that complainant, having no beneficial interest therein, compelled her by threats to have the title vested in their joint names, and asserts that under the circumstances he holds the title to the equal undivided one-half part thereof, standing in his own name, in trust for her, and prays a decree to that effect.

All the facts upon which this theory is based are denied by the complainant in his replication, and in it he points out and claims that the contract of January 31st, 1894, was rendered inoperative and of no binding effect by the decree of divorce and by the notice of rescission thereof.

That the effect of the divorce was to destroy the estate by the entirety was admitted not only in the answer of the defendant but in the argument, and seems to be the result not only of the authorities but of sound reasoning.

The effect of the divorce upon the contract of January 31st, 1894, raises a question of more difficult solution.

*First.* Is it still binding? *Second.* Does it give the wife an equitable lien upon those premises?

But laying aside for the present the first question, let us look at the next question, whether the contract of January 31st, 1894, gives the defendant any lien, legal or equitable, on the interest of the complainant in the property in ·question for the monthly payment provided for therein.

The language is that the defendant, in consideration of the covenant of the complainant to make to her the monthly payment of $75, "does hereby agree to and with her said husband that he shall be entitled to receive, during the term of his natural life, all the rent, income and profits of the property."

Now, the right which the wife had to give in those premises

was settled in the case of *Buttlar* v. *Rosenblath,* reported in *42 N. J. Eq. (15 Stew.) 651* (at *p. 657*). The wife has simply a right to one-half of the rents and profits, and those, and those only, she pledged to her husband.

That right the complainant has deliberately renounced both in the written rescission, to which reference is above made, and also in filing his bill for partition. I am not aware of any authority for the proposition that a tenant in common of an equal undivided share in lands who also holds an encumbrance on the other share, cannot prosecute a suit for partition where he waives his lien upon the other share.

I can find nothing in the agreement of January 31st, 1894, which gives the defendant any lien upon complainant's share for the monthly payment provided therefor. I think that the existence of the agreement, even if the complainant has by it a continuing lien upon defendant's share to secure his liability thereunder, furnishes no defence to his suit for partition. He prays no relief against it, nor does he pray in the alternate that if it be held binding upon him that he is entitled to a lien upon the defendant's share to protect himself against it.

This view renders it unnecessary to determine whether the complainant's obligation under that agreement has been discharged by the divorce obtained against him by defendant.

It may be observed, however, that the general rule is that no vested interests are disturbed by a decree of divorce unless the instrument under which the vesting occurred provides therefor. *Dixon* v. *Dixon, 23 N. J. Eq. (8 C. E. Gr.) 316; S. C., 24 N. J. Eq. (9 C. E Gr.) 133; Lister* v. *Lister, 35 N. J. Eq. (8 Stew.) 49; Charlesworth* v. *Holt, L. R. (1873), 9 Exch. 38; 2 Bish. Mar., D. & S. § 1654 el seq.*

One ground upon which complainant relied in argument as to the validity of the contract was that, being himself about fifty-nine years old and defendant about sixty-six years old, his right of survivorship, arising out of the estate by the entirety, had a distinct value, and that this valuable right was destroyed by the action of the defendant.

The principal contest between the parties was that raised

by the defendant, setting up an equitable title to the whole fee of the premises in question.

To this counsel for complainant pointed out in argument as a complete answer that the defendant, by entering into the contract of January 31st, 1894, and now still asserting its validity, distinctly ratified and affirmed the title of the complainant in the premises. Perhaps I might rest the case on that point alone, or, perhaps, I might decide it in favor of the complainant on the merits and give as my reason simply that I had gone through the evidence carefully and had come to the conclusion that the defendant's case wholly failed, and say that while I found both parties to be industrious, thrifty and saving, and to have contributed, as such people under such circumstances usually do, in proportion to their several ability to the little fortune accumulated by them, and while the complainant distinctly declared that defendant had been during nearly the whole of their married life a faithful, economical helpmeet, and that he was entirely willing that she should have one-half of this property, yet I found, as a matter of fact, that the complainant was an unusually energetic man and possessed of unusually good business judgment in business affairs and was the principal creator of the fortune.

Nevertheless, I deem it my duty to state somewhat in detail the result of my study of the evidence. (Discussion of evidence omitted.)

The net result is that the two properties here in question are held between the parties in equal shares, and the defendant has beside her share therein nearly $5,000 worth of property, which came from the same source as the properties here in question, so that she has, and must continue to have, much more than an equal one-half of their joint earnings.

The evidence shows clearly three matters—*first,* that the source of the money was threefold: profits in the bakery business, profits in the horse feed business, and profits on the judicious investments of money in real estate. For all these the complainant is entitled to the principal credit. *Second,* that from the start up to the time that the Clinton street property

became vested in the name of the defendant alone the complainant handled all the money and had every opportunity to place it to his own credit in bank, but voluntarily placed it to the joint credit of himself and defendant. *Third,* the defendant repeatedly, in the course of her evidence, testified that the reason why she resisted, as far as she did resist, complainant's entreaties to reinvest the property in their joint names, was that she was afraid that he would run in debt and be sued and that she would be obliged to pay it, as she had the Rosenblath debt. She nowhere, when off her guard, put herself on the ground that she was the meritorious owner of the property.

The fact that the property once held by the parties jointly was voluntarily conveyed by the complainant to defendant for the purpose of hindering and delaying complainant's creditors does not prevent a court of equity from favoring its return to the original owner. I had occasion to express my views on this subject in the case of *Pitney* v. *Bolton, 45 N. J. Eq. (18 Stew.) 639* (at *p. 643*). The language I there used was that "our innate sense of justice is always gratified when we find the rules of equity as applied to any particular case squaring themselves with what is honorable and just between man and man," and I cited as an illustration the case of *Davis* v. *Graves, 29 Barb. 480,* which was this in brief: A debtor, desiring to hinder and delay his creditors, conveyed his property to a third party, who held it for a considerable time as a fraudulent grantee. Subsequently the fraudulent grantee became himself considerably indebted, and in order to prevent his creditors from seizing on the property held in trust by him for the fraudulent grantor reconveyed it to the fraudulent grantor, and the court refused to assist the creditor of the fraudulent grantee in applying the property so conveyed back and forth to the payment of the debt of the fraudulent grantee. The decision in the case against Bolton was affirmed in the court of errors and appeals for the reasons given by me in the court below. *46 N. J. Eq. (1 Dick.) 610.*

My conclusion is that the defendant's cross-bill is without merit and must be dismissed, with costs, and that the complainant is entitled to a decree for partition. I will advise a decree accordingly.