ANNA RASMUSSEN, complainant-respondent,

*v.*

BRIX NIELSEN, otherwise known as ROBERT NIELSON or ROBERT B. NIELSEN, defendant-appellant.

[Argued May 26th, 1948.   Decided September 3d, 1948.]

*Mr. William Rubin,* for the complainant-respondent.

*Mr. R. Lewis Kennedy,* for the defendant-appellant.

The opinion of the court was delivered by

McLean, J.

This is an appeal from a final decree in Chancery entered on advice of Vice-Chancellor Egan finding that the defendant holds certain lands as trustee for the benefit of complainant who it is found is the beneficial and equitable owner thereof, and directing the defendant to execute a deed of conveyance to the complainant for the same.

The facts are adequately stated by the Vice-Chancellor in his conclusions (Docket 147/469; not officially reported): The complainant contends that she is the equitable owner of the premises described in the bill of complaint and known as 134 Humphreys Avenue, 132 Newman Avenue (also known as 67 West 5th Street), and 125 West 5th Street, all located in the City of Bayonne, County of Hudson, and State of New Jersey, the legal titles of which are vested in the defendant. A trust is sought to be impressed on the premises aforesaid.

The complainant and her late husband, Harold Rasmussen, conducted a rooming house in the Humphreys Avenue premises, which they acquired in or about the year 1929. In the same year Harold and the defendant were both employed by the Gulf Oil Company in the City of Bayonne. Harold invited the defendant to live at his home. The defendant accepted the invitation and took up his residence in the

Humphreys Avenue home. He remained there until about the year 1935, when Harold ordered him out of the home because an apparent friendship had developed between the complainant and the defendant which Harold did not relish, and the defendant thereupon departed. The friendship caused marital differences between Harold and the complainant. Later in the same year Harold separated from his wife and never returned to the Humphreys Avenue home.

The separation between the complainant and her husband resulted in a divorce in or about the year 1944 or 1945. In the divorce proceedings complainant was awarded alimony at the rate of $85 a month.

When the complainant and her husband separated, the defendant returned to the complainant's home, took up his abode there, and became what is commonly referred to as the "star boarder." He remained such until in or about the year 1941, when the erstwhile friendship between him and the complainant terminated.

The complainant says the titles to the premises aforesaid were bought and paid for solely by her, and that they were taken in the name of the defendant, at his solicitation, as an accommodation and protection to her. This the defendant denies and contends that in or about the year 1937 he and the complainant entered into an oral partnership agreement to conduct a rooming house business in the premises aforesaid.

It appears that a mortgage on the Humphreys Avenue property, given by the complainant and her husband Harold, was foreclosed. The complainant consulted former Judge Horace Roberson, a reputable lawyer, located in the City of Bayonne, to represent her in the proceedings. She desired to regain the title to the premises but was told by Judge Roberson that because of the separation that then existed between her and her husband, and of a deficiency judgment that had been entered against them, it would be inadvisable to reacquire the property in her own name. He suggested to her that the title be placed in the name of some other person. A friend, Mrs. Brennault, was suggested for the purpose, but it developed that she had a husband living, so it was considered inadvisable to vest the title in her.

The defendant who was present at the time, and who is unmarried, said he would be willing to take the title for the complainant. Accordingly, title to the Humphreys Avenue property was taken in his name.

For the reasons stated above, the titles to the other two premises were eventually taken and held by the defendant.

The evidence discloses that the premises are used as boarding and rooming houses; that the complainant conducted and operated them as such; that she contributed the moneys for acquiring them; that she paid the taxes, the interest and principal due on the mortgage, and likewise all the expenses of maintaining the business. She kept complete records of accounts of income and disbursements. She was generally recognized as the owner of all the premises, and as the sole operator of the rooming house business. She kept complete records of accounts of all income and disbursements, not only from the business, but from every other source.

The defendant is asserting his claims as a partner in the business and in the real estate, indicated that the basic idea behind the formation of the partnership was that the proceeds arising therefrom were to be used toward defraying the expenses of the education of the complainant's three boys; after that was accomplished, he said, they would dispose of the business and properties and they would "go into the country for the rest of our days. That was the primary reason for the starting of this business." The learned Vice-Chancellor concluded: "The testimony satisfies me most convincingly that no partnership relationship exists or ever existed between the parties, and that the defendant holds the title to all the premises aforesaid in trust for the complainant."

Appellant states five grounds of appeal: (1) that complainant failed to establish a resulting trust by the most convincing and satisfactory kind of proof; (2) that competent and material evidence proffered on behalf of the defendant to prove his demand for an accounting from the complainant, was rejected; (3) that complainant did not come into court with clean hands; (4) that defendant was entitled to a decree declaring the partnership or *quasi*-partnership between himself and complainant dissolved and its assets dis-

tributable in equal shares to complainant and defendant; and (5) if the Chancellor did not err in any other respects, he erred in failing to provide the exoneration of the defendant from liability under the bonds and mortgages on which he became obligated when he became vested with titles to the premises described in the decree.

The case was orally argued and our consideration thereof and a careful analysis of the proofs leads us to agree with the determination of the Court of Chancery.

The first, second and fourth grounds of appeal are covered by the finding that no partnership relationship existed. There was no occasion for an accounting, dissolution of the partnership and division of profits, and testimony relating thereto was properly rejected.

We find no merit in the contention that complainant did not come into court with clean hands and we concur in the conclusions of the Vice-Chancellor "The defendant is attempting to stretch the application of the equitable maxim to undue lengths in this case. The complainant acted under the advice of counsel. The government, represented by a Mr. Slattery, was acquainted by her, and her counsel, with all the details of the situation of the title to the premises. The deficiency judgment was subsequently satisfied. The complainant made no fraudulent representations; nor was she guilty of any act indicative of fraud. There was no evidence of conscious or evil intent on her part to defraud. 'He who comes into equity must come in with clean hands' is a maxim based on public policy, and it is not so rigid in its application that it may not be relaxed in the interest of fairness. In the pending situation it would be the height of injustice to permit the defendant, who gained the complainant's trust and confidence on the pretence of protecting her, and then attempts to victimize her, to take advantage of his own wrong. To permit him to gain or benefit in the circumstances would be doing violence to equity and good conscience."

Appellant complains that the decree did not provide for the exoneration of the defendant from liability under the bonds and mortgages on which he became obligated when he became vested with the titles to the premises described in

the decree. This point was not presented below, and therefore may not be here used as a ground for reversal. However, it is equitable that the defendant should be relieved from these obligations and inasmuch as respondent tenders herself without objection to a modification of the decree in that respect, that will be done.

With this modification the decree is affirmed, with costs to respondent.

*For modification*—THE CHIEF-JUSTICE, BODINE, DONGES, HEHER, COLIE, WACHENFELD, EASTWOOD, BURLING, JACOBS, WELLS, DILL, FREUND, McLEAN, SCHETTINO, JJ. 14.