SUSIE WANTULOK, Administratrix of the Estate of John A. Wantulok, Deceased, and Susie Wantulok, sole Heir-at-Law of the said John A. Wantulok, Deceased,

*Plaintiff and Appellant,*

vs.

JOE WANTULOK,

*Defendant and Respondent.*

(No. 2446; February 7th, 1950; 214 Pac. (2d) 477)

24

For the plaintiff and appellant the cause was submitted upon the brief and also oral argument of H. Glenn Kinsley and James Munro, both of Sheridan, Wyoming.

For the defendant and respondent the cause was submitted upon the brief of Raper and Raper of Sher-

idan, Wyoming, and oral argument by **Mr. John F. Raper.**

## OPINION.

BLUME, Justice.

The plaintiff herein is Susie Wantulok, Administratrix of the estate of John A. Wantulok, and sole heir-at-law of John A. Wantulok. The defendant is a brother of John A. Wantulok. This action was commenced on July 16, 1948. Plaintiff alleged her status as heir and administratrix; that John A. Wantulok

died intestate on May 21, 1945; that at that time, he was seized and possessed of two portions of Block 16 of Suburban Homes Company Addition to the City of Sheridan, Wyoming, the property in dispute herein. It is fully described in the petition and the decree herein and we need not do so here. The plaintiff further alleged that on April 26, 1937, she and her husband conveyed the above real estate to the defendant by warranty deed recorded April 27, 1937; that this deed was in fact without consideration; that the legal title to the real estate involved was placed in the defendant in trust for the grantor to be thereafter reconveyed by the defendant to John A. Wantulok, his heirs or assigns; that she and her husband, at all times, have resided and have controlled the premises in question. Plaintiff asked in substance that the defendant be restrained from disturbing her and her possession of the property and that it be declared that the defendant holds the premises in trust as above mentioned.

The defendant answered and filed a cross-petition. In that cross-petition and in the answer, he alleged that on September 1, 1936, John A. Wantulok and his wife gave him a mortgage on the premises involved herein for the sum of $1500 which he claimed he loaned to the husband of the plaintiff between 1912 and 1926; that the deed of April 26, 1937, was executed in satisfaction of the foregoing mortgage and upon further payment by the defendant to the husband of the plaintiff of the sum of $1000. Defendant accordingly asked that he be declared to be the absolute owner of the property in question here. The court entered judgment on February 23, 1949, and made the following finding of fact: Plaintiff is the administratrix of the estate of John A. Wantulok, deceased, and is sole heir; she and her husband on November 25, 1936, executed a mortgage to the defendant covering the property

herein involved for the sum of $1500; the deed here-inabove mentioned was executed on April 26, 1937; at the time the property was so mortgaged and conveyed, it was the home and homestead of the plaintiff and her deceased husband and was worth in excess of $2500; both mortgage and deed were given without consideration and were given for the purpose of delaying or hindering the creditors of John A. Wantulok and were accepted by the defendant for the same purpose and with the oral understanding that he, the defendant, would reconvey the property when so requested by the plaintiff and her husband; the court should not enforce any of the claims or demands or agreements of the parties against each other arising out of the mortgage, deed, or oral understanding, but should leave them as it find them. It was accordingly ordered, adjudged, and decreed that neither party take anything and that the plaintiff's petition and the defendant's cross-petition be and are dismissed.

From that judgment, the plaintiff has appealed. The defendant did not appeal. His counsel, however, appeared in this court insisting that the judgment of the district court should be affirmed, at the same time joining counsel for the plaintiff in asking that, if possible, the title to the property be extricated from the deplorable condition in which it is now found.

We accept the finding of the trial court that the mortgage and deed above mentioned were without consideration. We have read over the evidence and believe that the court reached the correct conclusion. So we shall not set out any of the evidence bearing on that point or bearing on the cross-petition of the defendant, except as it might be necessary incidentally, and we shall confine ourselves in briefly outlining the evidence which seems to have a bearing on the finding of the court that the property in controversy was

conveyed to hinder and delay the creditors of the husband of the deceased. That evidence is based in the main on the testimony of the plaintiff.

Plaintiff's husband was a coal miner and, seemingly, uneducated. He died in 1945. Plaintiff, herself, is uneducated, understands little of the laws of this country and her testimony had to be taken through an interpreter. Plaintiff's husband owned the property in controversy, consisting of some eight acres of land near the City of Sheridan, Wyoming, part of it being swamp land. A house of seven rooms was erected thereon which was occupied by the plaintiff and her husband. In addition thereto, they had a house of three rooms which was rented and on which plaintiff and her husband at all times collected the rent without any objection on the part of the defendant. Plaintiff and her husband had a daughter who was born in 1911. That daughter became sick in the early part of 1936 when she was 24 or 25 years of age. She lay sick for some six weeks and died in March, 1936. By reason thereof the plaintiff and her husband—as plaintiff testified—owed about $1400.00, due to the physician and the hospital and for funeral expenses. They owed no other debts. They had only $500 and paid that on these bills. Plaintiff's husband was out of employment so the plaintiff, herself, hired out as a cook and for a number of years acted as such to earn the money to pay the indebtedness due as above mentioned, and that indebtedness was, prior to the commencement of this action, all paid. After paying the $500 in cash—all the cash that they had—there was still due approximately the sum of $900. Plaintiff testified that they —she and her husband—wanted to pay the remaining indebtedness, and merely wanted time to do so. But plaintiff's husband, fearing that such time might not be given, but that their property might be taken from

him, he and the plaintiff gave to the defendant, brother of plaintiff's husband, a mortgage for $1500, in November, 1936, and the deed above mentioned in the spring of 1937. No consideration was given by the defendant for these conveyances, and the defendant agreed orally at the time when the deed was given that he would reconvey the property to the husband of the deceased at any time upon request. Defendant, so plaintiff testified, never had the deed or mortgage in his possession though recorded, but they remained in the possession of herself and of her deceased husband at all times after the execution thereof. Nor did the defendant ever receive an abstract of title to the property. Plaintiff and her husband continued to reside on the premises herein involved and controlled it at all times. Nor did the defendant ever demand possession thereof until just a short time prior to the commencement of the action herein. Plaintiff and her husband, at all times, paid the taxes on the property and claimed the usual exemption of $500 on her home and homestead. During 1947, plaintiff made permanent improvement on the property of the value of approximately $1500. This was done with the knowledge and acquiesence of and without any objection on the part of the defendant.

As a general rule, courts will not aid a fraudulent grantor to recover from his transferee, property transferred in fraud of creditors. 37 C. J. S. 1098. And when he has thus transferred his property, he is not ordinarily entitled to have a trust enforced in such property for his benefit against the transferee, unless he is not in pari delicto with the transferee or there has been in fact no fraud. 37 C. J. S. 1105. These rules are based upon the maxim that a litigant must come into court with clean hands. It has, however, been held that proof of a fraudulent purpose of a transfer is not a

part of the plaintiff's case but is a matter of defense and should be specially pleaded. Gallo vs. De Michael, 118 Conn. 487, 172 Atl. 922. It was not pleaded in this case. Glenn on Fraudulent Conveyances and Preferences, Rev. Ed., Sec. 118a, after discussing the general rule above mentioned, states: "As seen above, we may accept it as true that the debtor and his grantee should have no relief against each other, and that the rule is one of public policy. Nevertheless, the rule is not self-executory, and a court will not act upon its own motion in such a case. On the contrary, this sort of defense must be affirmatively asserted. 'If a defendant,' as James, L. J., said in just such a case, 'means to say that he claims to hold property given to him for an immoral purpose, in violation of all honour and honesty, he must say so in plain terms, and must clearly put forward his own scoundrelism if he wants to reap the benefit of it.' In other words, if there is a trust or contract, it must be performed, unless the defendant plainly sets up the rascality of the deal as a reason why he should not be judically coerced." The author cites the case of Haigh vs. Kaye, L. R. 7 Ch. App. 469 (1872). To that effect, also, is the case of Day vs. Day, 17 Ont. App. 157. The American doctrine, however, seems to be that a court may and sometimes should raise the question as to the fraudulent grantor's right to relief upon its own motion. 37 C. J. S. 1099, 30 C. J. S. 487. However, even that rule has its limitations. It has been held that if a fraudulent grantor can make out his case without reference to his fraudulent conduct, the court will not on its own motion interfere or deny the plaintiff the relief sought. Paula vs. Soares, 304 Mass. 450, 23 N. E. 2d 1006, Murphy vs. Moore, 228 Mass. 565, 568, 117 N. E. 918, 919. In Cowles vs. Cowles, 89 Neb. 327, 131 N. W. 738, the court enforced a trust in favor of a fraudulent grantor partly for the reason that the fraudulent trans-

fer was not pleaded by the defendant. When this action was brought, more than ten years had expired after the conveyance in question was made, and under the doctrine of laches no creditor had then a right to attack the conveyance. 37 C. J. S. 1362. In other words, so far as creditors were concerned, there was not, at that time, in legal contemplation, any transfer in fraud of creditors. It would seem as though that should have had a bearing, along with other matters, on the point, as to whether or not the court should have considered the question of a fraudulent transfer without it being pleaded, as it did in this case.

Counsel for plaintiff contend that in view of the fact, as shown by the evidence, that the debts in question herein were all paid at the time of the commencement of this action, the fraud, if any, was purged and should not have been considered herein by the court. Counsel cite the case of Carman vs. Athearn, 77 Cal. App. 2d 585, 175 P. 2d 926, 933. That case involved an agreement between husband and wife as to the partition of property, which the wife claimed to have been transferred to her in fraud of creditors. The court stated: "This so-called 'clean hands' doctrine is not here applicable for several reasons. In the first place, the evidence here shows that plaintiff has purged himself of his prior fraudulent conduct. His uncontradicated evidence was to the effect that the claims of his first wife have been fully paid. While there was evidence by defendant that plaintiff owed other creditors, plaintiff testified the claims of these creditors had also been settled. The trial court chose to believe plaintiff and to disbelieve defendant. No creditor testified that plaintiff owed him one cent. Under such circumstances the law is well settled that the 'clean hands' doctrine has no application." But the contrary has been held in other cases, holding that a fraudulent

conveyance is not purged although the claims of creditors have been satisfied. 37 C. J. S. 1100, Note 62. The California holding may perhaps be explained by the fact that the fraud was purged by the plaintiff in that case promptly, for it is said by Scott on Trusts, Vol. 3, page 2200 that: "where a debtor has transferred property in trust for himself for the purpose of defrauding creditors, it has been held that if he moves promptly he can compel the trustee to return the property to him, since the result would be to prevent the carrying out of his. illegal purpose." A number of cases are cited. See also Hurwitz vs. Hurwitz, 136 Fed. 2d 796, 798. In the case at bar, the plaintiff and her husband did not act promptly in asking to have the conveyance in question here cancelled. It is indeed said in Carll vs. Emery, 148 Mass. 32, 18 N. E. 574, 12 A. S. R. 515: "That a fraudulent transaction may be purged of the fraud by the subsequent action of the parties is well settled." In 24 Am. Juris. 262-263, it is said: "While the early authorities held that under the Statute of 13 Elizabeth, if there was actual fraud at the outset of the transaction, nothing thereafter could in any way overcome the effect thereof, yet exceptions to the rule have come to be recognized, so that today there is no doubt but that a fraudulent transaction may be purged of the fraud by the subsequent action of the parties." And see Dickerson vs. Murfield, 173 Ore. 662, 147 P. 2d 194, 199. However, the rule has not so far been extended, generally at least, to a situation such as confronts us. Nevertheless, the fraud herein, if any, has been purged to some extent, and we think that the fact of payment of the debts in question should have a bearing, in equity, in determining, along with other facts, as to whether or not a trust such as here involved should be enforced.

In 24 Am. Juris. 269, it is said: "While a party to the transaction must fail if he cannot make out a case without disclosing a fraudulent design, the prevailing view is that where the rights of creditors are not involved in the suit, relief will not be denied to a party to the transfer if he can make out his case without referring to the facts disclosing fraud." The rule has been applied in enforcing a trust, notwithstanding that it was claimed by the defendant, or it was found by a master in chancery, that a conveyance was in fraud of creditors. See Moffett vs. Parker, 71 Minn. 139, 73 N. W. 850, 70 Am. St. Rep. 319, Day vs. Day, 17 Ont. App. 157, Lufkin vs. Jakeman, 188 Mass. 528, 74 N. E. 933, Paula vs. Soares, supra. In Levy vs. Levy, 309 Mass. 486, 35 N. E. 2d 659, the court said: "The defendant's argument that the only 'reasonable and warranted inference' to be drawn from the findings of the master is that the transfers of the moneys were made by the plaintiff 'as part of his scheme to convey in fraud of his creditors' is without merit. Without intimating that the facts found show that the transfers involved were made for the purpose of defrauding creditors, no fraud was practiced upon the defendant and she cannot rely upon any alleged attempt of the plaintiff to defraud third persons." The rule is recognized, though not applied, in Goodman-Buckley Trust Co. vs. Poulos, 124 Neb. 697, 248 N. W. 64, Fisher vs. Keeler, 142 Neb. 728, 7 N. W. 2d 659. There is no doubt in this case that plaintiff was fully able to make out her case, to establish a trust, without referring to any fraudulent conduct. Moses vs. Moses, 138 N. J. Eq. 287, 48 Atl. 2d. 397, Hickey vs. Ross, 197 Okla. 543, 172 P. 2d 771, Bogert on Trusts and Trustees, Vol. 2, p. 1355, Vol. 3, p. 196, 197, Hamilton vs. First Nat. Bank of O'Donnell, Tex. Civ. App., 155 S. W. 2d 626, Nichols vs. Nichols, Tex. Civ. App., 170 S. W. 2d 558, Collins vs. Collins, 46

Ariz. 485, 52 P. 2d 1169, Bell Holt McCall Co. vs. Cap-
lice, 119 Mont. 463, 175 P. 2d 416, 419. It seems to
be held, however, that if in fact the plaintiff intro-
duces evidence showing fraud, then the foregoing rule
cannot be applied. O'Gasapian vs. Danielson, 284
Mass. 27, 187 N. E. 107, Hickey vs. Ross, 197 Okla.
543, 172 P. 2d 771, 775. Unfortunately, plaintiff in
this case on her direct examination, was in effect per-
mitted to testify that the property was transferred in
order that creditors might be delayed. Nevertheless,
it is clear that the court, in the Oklahoma case just
mentioned, directed a reconveyance of property and
enforced the trust therein involved, partially for the
reason that in that case the plaintiff had been able to
make out his case without referring to the fraud, even
though some fraud, or apparent fraud, was disclosed
by him. We think that we too, in balancing the equities
herein, should not entirely overlook this factor.

Some of the cases hold that when a conveyance is
made with a fraudulent intent, it cannot be recovered
by the grantor even though there was no injurious
consequences and no creditors in fact existed. Other
cases, however, more numerous, take a more charitable
view and hold that when no creditors in fact exist,
then inasmuch as no one has been harmed, the trans-
action is not to be deemed to have been a fraudulent
conveyance and hence that the transferrer should be
permitted to recover the property so conveyed. 24
Am. Juris. 269, Sec. 120, 37 C. J. S. 1101. Scott on
Trusts, Vol. 1, page 399, calls the latter view to be the
one supported by the weight of authority.

The rule has arisen in connection with a transfer
of a homestead. It was said in Alexander vs. Bobier,
65 Okla. 301, 166 P. 716, 718, as follows: "The law has
made the homestead free and independent of its own-
er's debts and creditors, and in extending credit to

his debtor the creditor need never take in consideration the homestead as an asset of his debtor, to which he can look for the satisfaction of the debt. The creditor is not permitted to inquire into the manner of the disposition of a homestead. The owners of homesteads have a right to dispose of the same as they see fit without interference by their creditors. The law has placed the homestead beyond the reach of the creditors, and it would be anomalous to say that it would be a fraud for the debtor to attempt to do the same thing. A conveyance of a homestead with intent to defeat creditors does not destroy or terminate the homestead." It is accordingly held, without exception, and we think rightly, by the courts which have had occasion to pass upon the question, that the grantor may compel a person who holds such property in trust, to reconvey it, notwithstanding the conveyance was made with intent to defraud creditors. Rossow vs. Peters, 277 Ill. 436, 115 N. E. 524, Evans vs. Evans, 180 Okla. 46, 67 P. 2d 779, Sallee's Exr. vs. Sallee, 18 Ky. L. R. 74, 35 S. W. 437, Bobier vs. Horn, 95 Okla. 8, 222 P. 238, 239, Cowles vs. Cowles, 89 Neb. 327, 131 N. W. 738. As was said in the case of Evans vs. Evans, supra: "If the property is a homestead, creditors are not defrauded, and the maxim with respect to unclean hands has no application." In the Illinois case cited, the court stated: "As to a debtor's homestead there are no creditors, and there can be no fraudulent disposition of it. Ferguson vs. Little Rock Trust Co., 99 Ark. 45, 137 S. W. 555; Ann. Cas. 1913A 960. The obvious reasons for this rule against the grantor attacking a conveyance made by him in fraud of the rights of creditors do not obtain where no creditors or third persons are injured or defrauded, and under the circumstances of this case as disclosed by the proof we think the rule cannot be invoked against the relief prayed for in the bill" (for reconveyance).

The plaintiff then has an absolute right to a homestead of $2500 and the absolute right to have the property reconveyed to her to that extent. That right should be unhampered and enforceable and usable unless there is some good reason to the contrary. Yet, if she should attempt to sell her right in the property, she would at once be met with the judgment of the trial court herein, and it is at least doubtful that her right above mentioned could be made effectual. The valuation over and above the $2500 is inextricably interwoven with the latter, so that no outsider would in all probability want to have anything to do with the property with the title in the present situation. We are thus faced with a dilemma. Since there seems to be no other solution, it would seem, that in view of the fact that the defendant holds the property in trust, and he would be unjustly enriched if he were to have any claim to the property whatever, it would be better to order the whole of the property reconveyed unless that stretches the conscience of the court of equity too far. Let us in that connection examine the situation of the property as to the value over and above $2500, from a different standpoint. We have already stated the rule in 24 Am. Juris. 269 that many of the courts take the more charitable view and hold that where no creditors in fact exist, the transaction should not be deemed to be a fraudulent conveyance. An annotation on that subject is contained in 157 A. L. R. 945 and subsequent pages. A great many cases are cited in that annotation and in addition to the cases so cited, the following cases, too, sustain that view: Rivera vs. White, 94 Tex. 538, 63 S. W. 125, Hanscom vs. Hanscom, — Ore. —, 208 P. 2d 330, Bloomingdale vs. Chittenden, 75 Mich. 305, 42 N. W. 836, Gunderman vs. Gunnison, 39 Mich. 313, Harvey vs. Ledbetter, 48 Miss. 95, Hoppin vs. Lang, 81 Mont. 330, 263 P. 421, Harper vs. Harper, 85 Ky. 160, 3 S. W. 5, 7 Am. St.

Rep. 583, Deaman vs. Deaman, 4 Ala. 521, 524, Davis vs. Otty, 35 Beav. 208, 55 Engl. Reprint 875. In Day vs. Lown, 51 Ia. 364, 1 N. W. 786, the court stated in part: "If there were no creditors or purchasers, the conveyance could not be fraudulent as to them. * * * Subject thereto the right of the plaintiff to dispose of his property as he saw proper, was absolute and unconditional. His intent in so doing was wholly immaterial, provided no one but himself was injured or had cause to complain. The statute must have a practical and legal application. It was not the intent the statute should be regarded in the light of a moral code, and operate on the conscience of the party making the conveyance. But its purpose is to protect the legal or equitable rights of others." In Rivera vs. White, supra, the Supreme Court of Texas said among other things: "Other authorities, with better reason, we think, hold that, where there is no creditor, there is no fraud, and therefore no policy of the law to prevent the enforcement of the trust. * * * The statute does not prohibit conveyances by persons who are not indebted, and no policy of the law is thwarted by a mere motive which cannot work injury to creditors. Ellis vs. Valentine, 65 Tex. 547. The motive with which such a conveyance is made and the fears by which it is prompted are of no importance unless there are creditors to be protected by the statute." Hence, it is said in 37 C. J. S. 1100: "If a party, under the mistaken apprehension that certain property could be held liable for his debts, conveys the property to evade this liability, he will be entitled to recover back the property if in fact it is not liable for his debts."

Were there any creditors in the legal sense of that term? Counsel for plaintiff strenuously insist that there were none; that the indebtedness mentioned in the testimony was not that of the plaintiff or her hus-

band, and that there is no evidence in the record which imposed a legal obligation upon them to pay it. The indebtedness involved herein arose by reason of the sickness and death of the adult daughter of the plaintiff and of her husband. It is said in 46 C. J. 1269: "In the absence of statute, a parent ordinarily is under no legal obligation to support an adult child; but the legal liability for the support of the child ceases when it reaches the age of majority." And in 46 C. J. 1270, it is said: "The parent is not bound to pay for necessaries furnished to an adult child, in the absence of any express or implied contract to pay therefor, although he may become liable by contract, as where the support of necessaries are furnished at his special request. It has been held, however, that a mere request to a physician to attend an adult child does not raise an implied promise to pay for his services. A promise by a parent to pay for past services rendered to his adult child without a previous request on the part of the parent is without consideration, and not enforceable." Fraud is not presumed. There must be definite proof that creditors existed who were able to be defrauded. Day vs. Lown, supra, Weinhart vs. Weinhart, 193 Misc. 424, 84 N. Y. S. 2d 375. In Hall vs. Linkenauger, 105 W. Va. 385, 142 S. E. 845, the court said: "The burden was on defendant to show that the deed was made with the intent to hinder, delay and defraud a creditor, with the secret understanding that it was to be held for the grantor's benefit and thus effectuate the fraud." The record is absolutely silent as to the circumstances surrounding the sickness and death of the daughter. We do not know whether she lived at home with her parents or with some one else; whether others called in the physician or whether that was done by her father or mother. There is no testimony of any demand made for payment on plaintiff or her husband on the part of the physician, the hos-

pital or any one else in connection with the indebtedness here involved. There is no evidence in this case of any contract of either the plaintiff or her husband to make either of them liable therefore. However plaintiff testified that "they" owed the debt. Counsel for plaintiff say that the expression is, under the circumstances, but a conclusion. We are cited to Irwin vs. Insurance Co. of North America, 16 Cal. App. 143, 116 P. 294, 295, and In Re Tompkins, 132 Cal. 173, 64 P. 268, which tend to support the contention of counsel. We are hardly in position to say that the testimony is inconsistent with the fact that plaintiff considered the indebtedness merely as a moral rather than as a legal obligation. In any event we are left in some doubt as to whether or not a moral obligation was converted into a legal one. But even if it was, the indebtedness was primarily at least that of a person other than plaintiff and her husband, and the assumption of it as legal obligation by the plaintiff or her husband deserves at least some commendation. And the facts here considered should have a bearing on the point as to whether or not the conscience of a court of equity would be stretched too far, as heretofore mentioned, in ordering the whole of the property reconveyed rather than the homestead alone. Our ultimate conclusion, based partly on what is here stated, and what will be stated additionally, is in the negative.

It is true that courts of equity are chary of reaching out a helping hand to litigants who voluntarily convey land in order to delay, hinder, or defraud creditors. Cook vs. Mason, 353 Mo. 993, 185 S. W. 2d 793, 157 A. L. R. 942. At the same time, the doctrine of clean hands is not rigid. Rasmussen vs. Nielsen, 142 N. J. Eq. 657, 61 Atl. 2d 441. It has its limitations. It does not operate so as to repel all sinners from a court of equity nor does it apply to every unconscien-

tious act of a party. It will not be allowed to work injustice and wrong. 30 C. J. S. 487, 489, Cook vs. Mason, supra. The doctrine is aimed at securing justice and equity, not to aid anyone to acquire property to which he has no right. Sliman vs. Moore, 198 Ark. 734, 131 S. W. 2d 1. A transferee in fraud of creditors is under a moral obligation to reconvey. 37 C. J. S. 1101. Courts favor the return of property conveyed fraudulently. Buttlar vs. Buttlar, 67 N. J. Eq. 136, 56 Atl. 722. The eminent author of Scott on Trusts (also reporter of the Restatement of the law of Trusts) admirably states in Vol. 3, page 2196 as follows: "The courts, it is believed, have been somewhat too ready to deny relief to the settlor, without much consideration of the injustice which results from permitting the trustee to keep the property. There is no doubt that as between the parties it is more just to require the trustee to surrender the property to the settlor than to permit the trustee to keep it. When the trustee is permitted to keep it, it is on the ground that there is a public policy against recovery by the settlor. The only justification for such a policy would seem to be that it might discourage others from creating trusts for such purposes. The rule denying relief to the settlor, however, seems to be so arbitrary in its operation that its value as a preventive measure may well be doubted. In denying relief to the settlor where the trust has failed for illegality the courts have not ordinarily considered with much care the question of public policy involved. They have frequently contented themselves with the quoting of one or another of the appropriate maxims, such as *in pari delicto potior est conditio defendentis* or *ex dolo malo non oritur actio.*"

We shall not base our final conclusion herein, except as to the homestead, definitely upon any one of the rules or matters herein discussed, but shall base that

conclusion upon the ensemble: When we put on one side of the scale of justice the possible fraud involved herein which is condemned by law, and put upon the other side the facts favorable to the plaintiff herein, the latter, we think, far outweigh the former. About 13 years have expired since the conveyance claimed to be fraudulent was made by persons uneducated and little conversant with our laws. During all that time the possession and control of the property has been in plaintiff or her and her husband. Defendant made no claim thereto for about 11 years after the conveyance to him was made. Whatever fraud there was, was mild, since there was no intent to defraud but at most only to delay creditors and thus save a home. The debt involved was probably basically and fundamentally not a legal but a moral debt. Plaintiff toiled as a cook to pay that debt and attempted to purge whatever fraudulent conduct there was by paying that debt in full. No creditor is here complaining and never has complained. Ten years after the claimed fraudulent conveyance was made, plaintiff expended the sum of $1500 in new improvements on the property which was her home and homestead, and she did so on the strength of belief that the property was hers, and with the acquiesence of the defendant herein. Defendant set up a claim that he paid full consideration for the property involved. The court found the claim unfounded. Defendant, then, in substance attempted to perpetrate a fraud upon the court. Such fraud is on no higher level than an attempt to delay a creditor and thus save a home. We think that in view of the foregoing facts it would be better and more in accordance with justice and public policy that her sins and that of her husband, if any, of the distant past should be forgiven and forgotten and that the cloud upon her title should be removed. Plaintiff was married in 1910 so that she is now nearing the allotted age of

three score years and ten.  If she can do nothing with her property as seems to be true in the situation in which the title is now, it is not improbable that she might become the object of public charity, and that is against public policy.  The court, by finding against the defendant, and dismissing his cross-petition settled the fact that he has no title to the property.  Since the plaintiff has possession, the actual title has substantially been left in her, merely leaving a cloud upon that title.  Yet to leave that cloud would mean to give the defendant, should he choose, the opportunity to extort money out of the plaintiff in order to remove it.  We do not think that in view of plaintiff's age and under the circumstances hereinabove mentioned, that opportunity should be given.

We think, accordingly, that the judgment of the trial court herein should be modified and that the cause be remanded to the trial court with direction to order defendant to convey the property to the plaintiff, and that even in case of failure to do so the conveyance herein involved, dated April 26, 1937, be cancelled and held to be null and void and that the defendant be held to have no interest whatever in and to the property herein involved by reason thereof.  It is so ordered.

RINER, C. J., and KIMBALL, concur.

## ON PETITION FOR REHEARING

(No. 2446; November 14th, 1950; 223 Pac. (2d) 1030)

## OPINION

BLUME, Justice.

A petition for rehearing has been filed in the foregoing case by the defendant. The original opinion herein is found in 214 P. 2d 477.

In this case the plaintiff and her deceased husband conveyed property of the value of approximately $11,-000 to the defendant, brother of plaintiff's deceased husband, without consideration and under an oral agreement to reconvey the property upon demand. Plaintiff sought to have the brother declared trustee and asked to have the property reconveyed and the title quieted in her. The court refused the plaintiff relief on account of the fact that it appeared that the conveyance was made in fraud of creditors. The court also dismissed defendant's answers and cross-petitions—one of the latter being in the nature of ejectment. He did not appeal. In view of that fact the only question before us was whether or not, upon plaintiff's appeal, she should be denied relief upon the ground stated by the trial court. We believed that the facts and circumstances in the case justified us in taking a step additional to that taken by the trial court and order reconveyance of the property in question and to quiet title thereto in the plaintiff.

The petition for rehearing is based on the ground of newly discovered evidence, and, secondly, on the ground that our decision is contrary to law and the evidence. We shall consider these grounds in their order. There

is attached to the petition a certified record of the proceeding in the District Court of Sheridan County resulting in a judgment in favor of Dr. O. L. Veach against the plaintiff herein, and her deceased husband for the sum of $500 and costs rendered on April 20, 1937. Counsel for defendant say in their brief that they and the defendant did not know of the judgment until February 9, 1950. No affidavit to that effect is attached. We may accept the statement of counsel so far as they are concerned, but it is evidently incorrect insofar as the defendant himself is concerned. The proceedings show that he intervened in the suit and claimed an automobile which was attached in the case. If he forgot the suit little blame can be attached to plaintiff if she, too, forgot it. Counsel's assertion that she committed a fraud upon the trial court comes, under these circumstances, with little grace. Plaintiff states in an affidavit filed herein that she was told by her husband that the Veach claim was settled; that she honestly believed that it had been fully paid and satisfied; that the judgment has, in fact, now been fully paid and satisfied, the date of the payment not appearing. Nothing to the contrary has been shown.

Appellate courts will at times, at the original hearing of a case, in order that a proper order may be entered, take into consideration an incontestible fact not appearing in the record on appeal. Generally, however, additional proofs cannot be supplied in the appellate courts. 5 C. J. S. 243-245, Hess vs. Conway, 93 Kan. 246, 144 P. 205. Few courts will grant a rehearing on the ground of newly discovered evidence. The general rule is to the contrary. 4 C. J. S. 2034, 3 Am. Juris. 347, 350. In United States vs. Maxwell Land-Grant Co., 122 U. S. 365, 30 L. Ed. 1211, 7 Sup. Ct. 1271, the court says: "If this court should grant a rehearing it could only be had, according to the uniform course of the court during its whole existence, upon the record now before the court

as it came from the Circuit Court for the District of Colorado." The rule should, of course, be applied with greater strictness if it is not shown that diligence has been shown in connection with the newly discovered evidence. Harris vs. Beazley, 2 Ky. Op. 548, Hummel vs. Muller, 102 Cal. App. 474, 238 P. 87. No proper diligence, we think, has been shown in this case. The judgment above mentioned was a matter of public record; defendant, as already stated, knew of the suit; plaintiff on her cross-examination was asked at length as to the payment of the hospital bill; she also testified as to the debt owing Dr. Veach, and stated that he "must have been (paid) because he never asked me for any money any more." A little inquiry, accordingly, would have led to the disclosure of the facts. We do not accordingly think that we are justified in this case to grant a rehearing on the ground here discussed, particularly since it appears that the judgment has in fact been paid.

We shall then proceed to consider the second alleged ground for rehearing. And we shall first consider the homestead right. We think that our holding in that connection was sound. Section 5-201, Wyo. Comp. St. 1945 relating to fraudulent conveyances excepts from the assets of a debtor property which is exempt from liability for his debts. Our holding is also sustained in addition to the cases originally cited by Freeman vs. Funk, 85 Kan. 473, 117 P. 1024, 46 L. R. A. N.S. 487, 496, Tanton vs. State Nat. Bank of El Paso, Tex. Civ. App., 43 S. W. 2d 957, 959, Schuerman vs. Schuerman, 7 Alberta 380, 3 Scott on Trusts, page 2198. In 1 Restatement of the Law on Trusts, page 200, it is stated: "if the owner of a piece of land transfers it to another who agrees to hold it in trust for the transferor, and the purpose of the transferor in making the transfer was to prevent a judgment creditor from levying execution upon the land, the transferor can compel the trans-

feree to reconvey the land if it was a homestead of the transferor's upon which the creditor could not have levied execution."

That leaves for consideration the property as to the value over and above the homestead right of $2500— allegedly about the sum of $8500. The case is one of first impression in this court. We did not rest our decision on any one particular rule. To determine whether the conclusion at which we arrived was right or wrong, we must bear in mind that the general rule, the prevailing view, mentioned in the original opinion (not wholly adopted by the trial court, see 37 C. J. S. 1097, Sec. 264), which gives no assistance to a fraudulent grantor as between the parties, is in direct conflict with the principle of equity which abhors unjust enrichment. And the question in any case like that before us always is as to whether the one or the other of these clashing and irreconcilable rules should predominate. The answer is not always easy. The general rule had its origin in a period when defaulting debtors were regarded almost as criminals and when thousands of them languished in jail without mercy for non-payment of debts. See Curtis vs. Perry, 6 Ves. Jun. 740, 747, 31 Engl. Rep. 1285, 1288, (1802), Baldwin vs. Cawthorne, 19 Ves. Jun. 166, 34 Engl. Rep. 480 (1812), Doe vs. Roberts, 2 B. & Ald. 367, 106 Engl. Rep. 401, 47 Mich. Law Rev. 877-906 "Coming Into Equity With Clean Hands," 3 Aubrey, Rise and Growth of the English Nation 136. It is not surprising that in view of such social atmosphere the principle in relation to unjust enrichment in cases like that before us was ignored. But with changes in ideology, the time was bound to come when the latter would be more and more pressing for equal or superior recognition, depending on the circumstances. We pointed out in the original opinion that the Massachusetts court holds that a defendant "cannot rely upon any attempt of the plaintiff to de-

fraud third persons," in order to evade an agreement to reconvey, and that it will not always take notice of evidence of fraud in connection with the original conveyance. Levy vs. Levy, 309 Mass. 486, 35 N. E. 2d 659, 661, and cases cited. We also noted in our former opinion that Carman vs. Athearn, 77 Cal. App. 2d 585, 175 P. 2d 926, 933, seems to hold that a fraudulent grantor may purge his fraud at any time, and will then be considered as coming into court with clean hands when seeking enforcement of an agreement to reconvey. The merits or demerits of such holding must, in the proper case, be judged, in part at least, by its contrast with the rule as to unjust enrichment, which latter in any case is an evil per se. Various exceptions have from time to time been engrafted on the general rule here considered. For a comparatively recent innovation by some courts see Finnegan vs. La Fontaine, 122 Conn. 561, 191 Atl. 337, Merz vs. Bank & T Co., 344 Mo. 1150, 130 S. W. 2d 611, Hurwitz vs. Hurwitz, 78 App. Cas. (D. C.) 66, 136 Fed. 2d 796, 148 A. L. R. 226 and Annotation, under which innocent heirs of a fraudulent grantor are not, in a case like that at bar, affected by the fraud of their ancestor. In our former opinion we quoted the view of 3 Scott on Trusts, page 2196, throwing doubt on the correctness and justice of the prevailing rule. It is not necessary to repeat the quotation here. Speaking on the subject along similar lines and incidentally it was said in Gowan's Adm'r. vs. Gowan, 30 Mo. 472, 476: "It may be questioned whether the determination of courts to give no assistance in the case of fraudulent conveyances, as between the parties, has been promotive of the ends of justice and is founded upon sound morality. It is seldom that both parties are equally to blame in a transaction tinctured with fraud in each, and if they are, the doctrine seems to encourage a double fraud on the one side to punish the single fraud on the other." In a note on Gallo vs. DeMichael,

118 Conn. 487, 172 Atl. 922, found in 44 Yale Law Journal 173, 175-176, it is said: "The penalty imposed is necessarily accidental and not measured by the offense, and it inures to the benefit of the transferee, a private party who is equally culpable. If a penalty is to be imposed for this type of conduct, it should be made criminal; and the fine, proportioned to the gravity of the offense, should go to the state. Reconveyance should be freely obtainable on the legal merits of the case. By the granting of the reconveyance, moreover, subsequent creditors would benefit in easier recovery from the transferor. In the absence of such thoroughgoing reform, the punitive policy of the courts in all but particularly flagrant instances might well be minimized." John H. Wigmore, speaking of the rule applicable in a case such as that at bar, and referring to the rule that the grantor cannot recover the property, states in 25 Am. L. R. 712-713 as follows: "But the whole notion is radically wrong in principle and produces extreme injustice. If A owes B $5,000 why should he not pay it whether B has violated a statute or not? Where the issue is as to the rights of two litigants, it is unscientific to impose a penalty incidentally by depriving one of the litigants of his admitted right. It is unjust, also, for two reasons: first, one guilty party suffers, while another of equal guilt is rewarded; secondly, the penalty is usually utterly disproportionate to the offense. If there is one part of criminal jurisprudence which needs even more careful attention than it now receives it is the apportionment of penalty to offense. Yet the doctrine now under consideration requires, *with monstrous injustice and blind haphazard,* that the plaintiff shall be mulcted in the amount of his right, whatever that may be. Take for example the case of Cambioso v. Maffet ( T Wash. D. C. 98), in which plaintiff and defendant were joint owners of a vessel. To avoid paying the tax on alien owners, the vessel was registered

in the name of the defendant. For this illegality the plaintiff is denied the help of the courts in making the defendant account for the vessel's profits. In this way, and in a hundred similar ways, a fine of thousands of dollars may be imposed for petty violations of law. One cannot imagine why we have so long allowed such an unworthy principle to remain." (Italics supplied). The statement of a man of the eminece of Wigmore in the legal field that the prevailing view is monstrous can hardly be lightly brushed aside.

If what has been said means anything and has any merit ,as we think it has, then it follows that the general rule above mentioned cannot be applied rigidly, and must give way, at times at least, to the equitable principle which abhors unjust enrichment, and that is as far as we thought it advisable to go in the original opinion. This position is fully supported by the Restatement of the Law of Restitution, which—doubtless in view of what has heretofore been stated—seems to represent what we may call an intermediate view on the subject before us, and which, if we may judge by the past, will not unlikely gain support. It is stated in Sec. 140, page 562 that: "A person may be prevented from obtaining restitution for a benefit because of his criminal or other wrongful conduct in connection with the transaction on which his claim is based." It may be noted that the statement contains no imperative. In the comment on that section on page 563 of the same work it is stated: "No definite rule can be stated which will determine in all cases whether restitution will or will not be granted since the courts consider all the circumstances involved in the particular case." Five different factors which may be taken into consideration are enumerated without stating which shall predominate in a particular case, thus leaving that to the discretion of the court. One of the factors mentioned is: "how great a forfeiture would ensue from a failure to give

relief." The factors enumerated are not intended to be exclusive. John W. Wade, Professor of Law and an able and extensive writer on the subject of restitution of benefits acquired through illegal transactions has this to say in 95 Univ. of Pa. L. R., page 302 as follows: "Some think that relief should be somewhat more freely granted; some take the view that it should not be given so freely. One may agree or disagree with the specific holding reached in the particular case. But as long as the matter is within the general discretion of the courts, flexibility, with adjustment either way, is possible. It would seem decidedly unfeasible to attempt to reduce the law in this field to a series of inflexible rules which would seek to cover every possible situation."

The evidence herein shows that the plaintiff's role in the transaction herein involved was comparatively passive, the active role seemingly being played by plaintiff's deceased husband and the defendant. After reconsidering the premises and the conclusion in the original opinion in the light of what has been here said, we think it unlikely that we were far from right or that an unjust result was reached. Rehearing will accordingly be denied.

RINER, C. J. and KIMBALL, J. concur.