Ronald H. HARSHA and Sharon A. Harsha, Appellants (Defendants),

v.

Marcella ANASTOS, Appellee (Plaintiff).

No. 84–38.

Supreme Court of Wyoming.

Jan. 7, 1985.

Patricia Schick of Patricia Schick & Associate, Laramie, for appellants.

William J. Flynn, Green River, for appellee.

Before THOMAS *, C.J., and ROSE, ROONEY **, BROWN and CARDINE, JJ.

ROSE, Justice.

This appeal concerns the application of the "clean hands" rule to proceedings to quiet title to certain real property claimed by appellants under the doctrine of adverse possession. The district court refused to enforce appellants' interest in the property on the ground that their "unfair acts" precluded equitable relief. Accordingly, the court restored possession of the disputed property to appellee, the title holder of record.

We affirm.

### FACTS

Appellee Marcella Anastos and appellants Ronald and Sharon Harsha reside on adjoining tracts of land in Green River, Wyoming, with the Harsha property lying to the east of the Anastos property. The parties are the record title holders of their respective lots. Their dispute concerns the ownership of a strip of land located on the Harshas' side of a boundary fence between the two lots.

Mr. Harsha's interest in his lot dates from 1944 when his father purchased the property for a family home. The Anastos family acquired their lot in 1928 and appellee became the record owner in 1962. Since at least 1944, a barrier has existed between the two lots, with the parcel of land at issue in the possession of the Harsha family. The Anastos family did not challenge the Harshas' use of the land until the 1970's.

In 1976 appellee's son, John Anastos, attempted to obtain a permit from the city to build a trailer court on property south of his mother's lot. He had difficulty obtaining the permit, apparently because of the confused state of the property lines in the neighborhood. In response to this problem, Mr. Anastos had the lots in the area surveyed and called a meeting of the affected property owners. Mr. Harsha and appellee attended the meeting. The bound-

aries of the lots were staked and the owners agreed to move their fences so as to conform to the proper boundary lines. Mr. Harsha agreed to move the fence separating his land from appellee's, when his neighbor on his eastern border, Walter Trujillo, adjusted his fence line to the east.

In Trujillo's presence, Mr. Harsha identified a surveyor's stake which marked the boundary between the Anastos and Harsha properties. Harsha informed Trujillo that, in the event John Anastos required the alignment of the fence with the boundary line, Trujillo would have to surrender ten feet of land to the Harshas. Trujillo agreed to this proposal after measuring his property and determining that his fence encroached upon the Harshas' lot.

Subsequently, Trujillo moved his fence and a trailer, surrendering, without compensation, approximately ten feet of land on his western boundary to appellants. Appellants used this additional property as their own, but refused to relinquish a similar parcel of land on their western boundary to appellee.

Appellee brought this action to quiet title to the disputed strip of land against the Harshas and all other persons. The Harshas counterclaimed for a decree adjudging their title superior to that of Anastos, based on adverse possession of the property for the statutory period.

Following a trial to the court, the judge entered an order restoring possession of the disputed land to Anastos and granting her motion to conform the pleadings to the evidence so as to reflect a claim for ejectment. According to his opinion letter, the trial judge denied appellants relief, notwithstanding their proof concerning adverse possession, on the principle that " 'he who comes into equity must come with clean hands,' " (27 Am.Jur.2d, Equity § 136, p. 666):

> " * * * [Appellants] obtained legal ownership of one strip of land adjoining theirs from Trujillo by Ron Harsha's representations to him, and seek ownership

---

* Became Chief Justice January 1, 1985.

** Chief Justice at time of oral argument.

through the application of equitable principles of another tract of land adjoining theirs from Anastos. I submit they came into this Court with unclean hands, seeking equity and giving none, and this they will not be permitted to do."

On appeal to this court, appellants assert that neither the facts nor principles of equity support the trial court's application of the "clean hands" doctrine to deny their claim to the adversely possessed land.

## THE "CLEAN HANDS" DOCTRINE

■ For a time, well in excess of the ten-year statutory period of limitations, § 1–3–103, W.S.1977,[1] appellants occupied the land to the fence line openly, notoriously, exclusively, continuously, in a hostile manner, and under a claim of right. We have held that possession of this quality and duration demonstrates the possessor's right to good title to the property under the doctrine of adverse possession. *Kranenberg v. Meadowbrook Lodge, Inc.,* Wyo., 623 P.2d 1196 (1981); *City of Rock Springs v. Sturm,* 39 Wyo. 494, 273 P. 908 (1929). We have also held, however, that an action to quiet title is equitable in nature, *Norris v. United Mineral Products Co.,* 61 Wyo. 386, 158 P.2d 679 (1945), and equitable remedies, including the declaration of interests in real property, depend upon a showing by the claimant of clean hands. *Wantulok v. Wantulok,* 67 Wyo. 22, 214 P.2d 477, 21 A.L.R.2d 572, reh. denied 223 P.2d 1030 (1950); *Takahashi v. Pepper Tank & Contracting Co.,* 58 Wyo. 330, 131 P.2d 339 (1942); *Dutch Maid Bakeries, Inc. v. Schleicher,* 58 Wyo. 374, 131 P.2d 630 (1942).

■ In *Dutch Maid Bakeries, Inc. v. Schleicher,* supra, this court considered the circumstances surrounding the parties' execution of and performance under a contract to refrain from competition. We refused to enforce the otherwise valid agreement, concluding that the evidence established plaintiff's unclean hands:

"Equity will not assist a party seeking to enforce a hard bargain. The right to specific performance depends upon circumstances and conditions in addition to the existence of a valid contract. The contract must be perfectly fair in all its parts, and free from misrepresentation or misapprehension. Specific performance will be refused when it appears that the plaintiff's conduct in obtaining the contract, or in acting under it, has been unjust and unfair. Though the contract be free from fraud, mistake or other feature that would authorize a court to set it aside, equitable relief may be denied if plaintiff obtained it by taking undue advantage of his position, or if in acting under it he has resorted to unfair conduct. These are expressions commonly used in elaboration of the maxim: 'He who comes into equity must come with clean hands.' See Pomeroy on Specific Performance, 3d Ed., §§ 38, 40; on Equity Jurisprudence, § 400." 131 P.2d at 634.

Similarly, the trial court in the instant case concluded that appellants' conduct and the circumstances surrounding neighborhood efforts to correct property lines precluded appellants from establishing good title in equity, notwithstanding their satisfaction of the elements of adverse possession. The Harshas joined their neighbors in agreeing to adjust their fence lines to conform to the proper boundaries of the lots. Walter Trujillo moved his fence, thereby enlarging appellants' lot. Appellants used and enjoyed that additional land, while continuing to assert their right to a similar strip of property adversely possessed. The evidence supports the trial court's conclusion that appellants acted inequitably toward their neighbors, including appellee. We will not disturb on appeal this factual finding of the trial court which is supported by the evidence. *Pine Creek Canal No. 1 v. Stadler,* Wyo., 685 P.2d 13, 19 (1984). Since appellants failed to demonstrate the

---

1. Section 1–3–103, W.S.1977, provides:
   "An action for the recovery of the title or possession of lands, tenements or hereditaments can only be brought within ten (10) years after the cause of such action accrues."

equities which entitled them to prevail in this quiet title action, the district court properly restored the disputed property to appellee, the record title holder. See *Takahashi v. Pepper Tank & Contracting Co.,* supra, 131 P.2d at 356.

 Appellants contend that by awarding the disputed land to appellee, the trial court enforced Mr. Harsha's 1976 oral agreement to return land which he had acquired under the doctrine of adverse possession. Such relief would be improper, appellants point out, since oral agreements to convey real property are unenforceable under Wyoming's statute of frauds.[2]

Neither the trial court, nor this court through affirmance, has resolved this action by enforcing an oral contract to convey real property. Rather, the district court *refused* to quiet title in appellants, since they failed to demonstrate the equities which entitled them to such relief. The "clean hands" doctrine effectively frustrated appellants' efforts to enforce their interests acquired through adverse possession, and possession of the property was restored to the title holder of record.

 Appellants also advance the argument that Anastos failed to carry her burden of proof in her action for ejectment[3] since no expert testimony nor appropriate description established the boundaries of the disputed property. However, Anastos established that she is the record title holder of Lot 4, Block 32, of the original town plat, and entitled to possession of the land described by such lot. Appellants concede that their fence encloses a strip of land, approximately ten feet wide, included within appellee's lot description. Under the

facts of this case, appellee carried her burden of proof for an action in ejectment.

The judgment of the district court is affirmed.

---

2. The statute of frauds, § 1–23–105, W.S.1977, 1984 Cum.Supp., provides in part:

"(a) In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof, be in writing and subscribed by the party to be charged therewith:

\* \* \* \* \* \*

"(v) Every agreement or contract for the sale of real estate, or the lease thereof, for more than one (1) year \* \* \*."

3. Section 1–32–202, W.S.1977, provides:

"In an action to recover real property it is sufficient if the plaintiff's petition states that he has a legal estate in and is entitled to possession of the real property, describing the same with sufficient certainty as to enable an officer holding an execution to identify it, and that the defendant unlawfully keeps him out of possession. It is not necessary to state how the plaintiff's estate or ownership is derived."